THE STATE OF OHIO, APPELLEE, *v.* MILLER, APPELLANT.

[Cite as State v. Miller (1977), 53 Ohio App. 2d 199.]

(No. C-76498—Decided August 24, 1977.)

*Mr. Thomas A. Luebbers, Mr. Paul J. Gorman* and *Mr. Robert H. Johnstone, Jr.,* for appellee.

*Mr. Andrew B. Dennison,* for appellant.

KEEFE, J. On March 6, 1976, defendant-appellant Miller was arrested by Cincinnati police officers for participating in presenting an obscene performance consisting of exhibiting motion picture films when admission was charged, in violation of R. C. 2907.32(A)(4).[1] Subsequently, defendant filed his motion to suppress evidence pursuant to Crim. R. 12(B)(3). After a hearing the motion was overruled and Miller was found guilty as charged and duly sentenced, all of which culminated in this appeal.

There are other basic facts in the scenario. The films

---

[1]R. C. 2907.32, pandering obscenity, states, in part:

"(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following: * * *

"(4) Advertise an obscene performance for presentation, or present or participate in presenting an obscene performance, when such performance is presented publicly, or when admission is charged; * * *."

were exhibited at 1213 Tennessee Ave., Cincinnati, a business-type building which includes an assembly room or auditorium. A witness identified it as the "Real Estate Building." The two officers who ultimately arrested Miller wore casual civilian clothes when they entered the subject building. Although the record reveals the two officers were unknown to the ticket-takers, after some superficial screening directed to discovering how the officers learned of the event, they were admitted for eight dollars each. After admission, at least one of the officers purchased a scotch and water drink. Several minutes later three other Cincinnati police officers entered the building and within a brief period of time the defendant Miller, operated a movie projector which showed two reels of film subsequently determined by the trial court, after reviewing them, to be obscene. The three police officers who arrived on the scene after the first two officers were recognized and as the three were being escorted out, identified themselves. Miller, the projectionist, was arrested and the films seized. After Miller had shown the films, he placed them inside a bag and took them into the kitchen area of a downstairs room, prompting one of the officers to conclude, as he testified, that the film exhibition had concluded for the evening. Officer Seiffert testified at the trial below, as follows:

"Q. Did you have—were you able to observe, have any knowledge, that there was to be a subsequent exhibition or showing or projection of these films?

"A. No sir. My observations led me to believe this was the end of the films. There was going to be some live entertainment—that was what they were setting up for * * *."

It was conceded by counsel for appellant that this was a "one-shot" affair; this was the only occasion these films had been or were to be exhibited. The films were seized without a search warrant.

The single assignment of error follows:

"The trial court erred in overruling appellant's motion to suppress the seized motion picture films from evidence."

The following is the appellant's view of the issue presented here for review and argument:

"Where motion picture films are seized without the intervention of a magistrate and the issuance of a search warrant, such seizure is unreasonable and repugnant to the First, Fourth and Fourteenth Amendments of the Constitution of the United States and such seized films cannot be introduced into evidence at the trial of the cause where an appropriate motion to suppress has been filed prior to trial."

Appellant relies upon *Roaden* v. *Kentucky* (1973), 413 U. S. 496, in which a county sheriff viewed a sexually explicit film at a local drive-in theater, at the conclusion of which he arrested the theater manager for exhibiting an obscene film in violation of Kentucky law, and seized one copy of the film as evidence without a warrant . A conviction ensued which the United States Supreme Court reversed, holding, according to the case headnote, which is an accurate distillation of the opinion itself, that "the seizure by the sheriff, without the authority of a constitutionally sufficient warrant, was unreasonable under Fourth and Fourteenth Amendment standards." Counsel also invite our attention to *Stanley* v. *Georgia* (1969), 394 U. S. 557 which held a Georgia statute unconstitutional under the First and Fourteenth Amendments, insofar as it made mere private possession of obscene matter a crime. The obscene matter in question consisted of films seized in a desk drawer in a bedroom of the defendant's home. The Supreme Court stated in *Stanley*:

"Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the *privacy of one's own home*." (Page 565.) (Emphasis supplied.)

The matter *sub judice* seems to us to present a fact pattern different from that in either *Roaden* or *Stanley*. Perhaps the matter now confronting us amounts to a situation somewhere betwixt the facts in *Roaden* (warrantless arrest in a commercial drive-in theater regularly open to the public) and *Stanley* (an arrest for possession of films

in defendant's own house). Regardless, the state of facts here unmistakably differs from both *Roaden* and *Stanley.*

Although *Roaden's* facts are distinguishable, the Supreme Court incorporates language therein which clearly applies to such facts as those before us. In *Roaden* the court states the following, at page 505:

"Moreover, ordinary human experience should teach that the seizure of a movie film from a commercial theater with *regularly scheduled performances,* where a film is being played and replayed to paid audiences, presents a very different situation from that in which contraband is changing hands or where a robbery or assault is being perpetrated. In the latter settings, the probable cause for an arrest might justify the seizure of weapons, or other evidence or instruments of crime, without a warrant. Cf. *Chimel v. California,* 395 U. S. 752, 764 (1969); *id.,* at 773-774 (White, J., dissenting); *Preston v. United States,* 376 U. S. 364, 367 (1964). *Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation."* (Emphasis supplied.)

In footnote six, on the same page, the court stated:

"* * * [W]here films are scheduled for exhibition in a commercial theater open to the public, procuring a warrant based on a prior judicial determination of probable cause of obscenity need not risk loss of the evidence."

If a rule of law requires police officers, circumstanced as here, to secure a warrant predicated on prior judicial evaluation of the films, a violation of the states' anti-obscenity laws is inevitable because if the officers left the building to secure a warrant—a procedure under the circumstances presenting quite substantial obstacles—reason dictates that upon their return the projectionist and films would be elsewhere. If the exhibition of such films in such an exigent fact pattern as here falls within the area of legitimate law enforcement—and the U. S. Supreme Court has so held²—enforcement would be impossible if a war-

---

²*Miller v. California* (1973), 413 U. S. 15.

rant based upon a prior judicial determination of obscenity were required. We view the instant situation as possessing exigent circumstances in which, as *Roaden* explains, police action "literally must be 'now or never' to preserve the evidence of the crime." Therefore, we decide that the court below did not err in overruling defendant's motion to suppress the seized motion picture films, thus prohibiting their introduction into evidence. They were properly in evidence.

*Judgment affirmed.*

SHANNON, P. J., and BETTMAN, J., concur.