THE STATE OF OHIO, APPELLEE, *v.* WILMOTH ET AL., APPELLANTS.

[Cite as State *v.* Wilmoth (1986), 22 Ohio St. 3d 251.]

252

(Nos. 85-72 and 85-73—Decided March 19, 1986.)

*Gregory A. White,* prosecuting attorney, and *Jonathan E. Rosenbaum,* for appellee.

*Smith & Smith, Gerald M. Smith* and *Daniel G. Wightman,* for appellants.

PATTON, J.   In their single proposition of law, appellants contend that a search warrant issued on the basis of unsworn oral statements of police officers is defective and requires suppression of any evidence obtained therefrom. This contention is without merit.

The United States Supreme Court has recently modified the exclusionary rule in *United States* v. *Leon* (1984), 468 U.S. ___, 82 L. Ed. 2d 677. In that case, the court held that the exclusionary rule should not be applied to suppress evidence obtained by police officers acting in objectively reasonable, good faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. The use of the exclusionary rule to enforce Fourth Amendment violations was not eliminated but it no longer applies to cases where the officers execute a warrant in "good faith." Based upon the following analysis, we formally adopt the good faith exception to the exclusionary rule found in *Leon.*

I

History of the Exclusionary Rule in Federal Court

The exclusionary rule has had a long and colorful history beginning with the case of *Boyd* v. *United States* (1886), 116 U.S. 616. *Boyd* has been recognized as the beginning of the exclusionary rule doctrine. Subsequently, in *Weeks* v. *United States* (1914), 232 U.S. 383, the United States Supreme Court relied on *Boyd* and announced the rule that evidence procured as the result of a constitutional violation, namely the illegal search and seizure of defendant's papers, could not be used to convict him in a federal prosecution.

Until the decision in *Wolf* v. *Colorado* (1949), 338 U.S. 25, overruled in *Mapp* v. *Ohio* (1961), 367 U.S. 643, 655 [16 O.O.2d 384], the United States Supreme Court had not been presented with the issue of whether the Fourteenth Amendment prohibited use of evidence gained through an unreasonable search and seizure in a *state* prosecution. In *Wolf,* the court held that it did not.

The United States Supreme Court applied the exclusionary rule in *Rochin* v. *California* (1952), 342 U.S. 165. In that case, the police had the defendant's stomach "pumped" at the local hospital to retrieve morphine capsules later used as evidence. Analogizing the procedure to coerced confessions, the court found that the police conduct so offended "a sense of justice" (*id.* at 173) as to constitute a violation of the Due Process Clause and disallowed use of the capsules as evidence and reversed defendant's conviction.

In contrast, the court allowed the conviction to stand in *Irvine* v. *California* (1954), 347 U.S. 128. The case concerned a series of surreptitious entries and subsequent bugging of defendant's bedroom. The court refused to depart from the earlier ruling in *Wolf* that in a prosecution in a state court for a state crime the Fourteenth Amendment does not forbid the admission of evidence obtained by illegal search and seizure. The court also refused to bring the case under the ruling in *Rochin* stating that in *Rochin* there existed coercion, an element totally lacking in *Irvine.*

In *Elkins* v. *United States* (1960), 364 U.S. 206, the United States Supreme Court widened the scope of the exclusionary rule in federal court. In *Elkins,* the court held that "evidence obtained by state officers during a search which if conducted by federal officers, would have violated a defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial." *Id.* at 223.

## II

### The Exclusionary Rule as Applied to States

In the landmark decision of *Mapp* v. *Ohio, supra* (367 U.S. 643) [16 O.O.2d 384], the United States Supreme Court carefully reexamined prior case law including *Weeks, supra; Wolf, supra; Irvine, supra;* and *Elkins, supra.* The court noted its prior decision in *Wolf,* and discussed the importance of the right to privacy. The court in *Mapp* held at 654-655:

"* * * Today we once again examine *Wolf's* constitutional documentation of the right to privacy free from unreasonable state intrusion, and, after its dozen years on our books, are led by it to close the only courtroom door remaining open to evidence secured by official lawlessness in flagrant abuse of that basic right, reserved to all persons as a specific guarantee against that very same unlawful conduct. We hold that *all evidence* obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." (Emphasis added.)

With the decision in *Mapp,* the United States Supreme Court had used the Fourteenth Amendment to extend the exclusionary rule to apply to state court proceedings.

### III

### History of Exceptions to the Exclusionary Rule

The United States Supreme Court did begin to reexamine the scope of the exclusionary rule. In *United States* v. *Calandra* (1974), 414 U.S. 338 [66 O.O.2d 320], the court held that a witness summoned to appear and testify before a grand jury is not permitted to invoke the exclusionary rule in order to refuse to answer questions on the ground that they are based on evidence obtained from an unlawful search and seizure. The court held at 348:

"In sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." (Footnote omitted.)

In *Michigan* v. *Tucker* (1974), 417 U.S. 433, the United States Supreme Court examined the rationale of the exclusionary rule as applied in the Fifth Amendment context. In *Tucker,* the court held at 446-447:

"Just as the law does not require that a defendant receive a perfect trial, only a fair one, it cannot realistically require that policemen investigating serious crimes make no errors whatsoever. The pressures of law enforcement and the vagaries of human nature would make such an expectation unrealistic. *Before we penalize police error, therefore, we must consider whether the sanction serves a valid and useful purpose.*

"* * *

"* * * *Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.*" (Emphasis added.)

The court recognized that acting "in * * * good faith" reduces significantly the potential deterrent effect of exclusion. See, also, *United States* v. *Peltier* (1975), 422 U.S. 531, at 539.

In *United States* v. *Janis* (1976), 428 U.S. 433, the Supreme Court held that the exclusionary rule would not be extended to exclude evidence used in a federal proceeding which was obtained by a state criminal law enforcement officer *in good faith reliance on a warrant later proved to be defective.*

On the same day the court decided *Janis* it also decided *Stone* v. *Powell* (1976), 428 U.S. 465, and held that a state prisoner could not be granted habeas corpus relief on the ground that evidence obtained through an unconstitutional search and seizure was introduced at trial. The record indicated that the defendant was given the opportunity at trial to fully litigate the Fourth Amendment claim. Therefore, the defendant could not use a habeas corpus action as an additional method to argue the Fourth

Amendment issue of exclusion. The court found the contribution of the exclusionary rule in that context was minimal when compared to the societal costs of applying the rule.

The court held that the rule is *not* a personal constitutional right, relying on the post-*Mapp* decisions for support. *Id.* at 486.

In discussing the costs of applying the rule, the court held at 489-491:

"The costs of applying the exclusionary rule even at trial and on direct review are well known: the focus of the trial, and the attention of the participants therein, are diverted from the ultimate question of guilt or innocence that should be the central concern in a criminal proceeding. Moreover, the physical evidence sought to be excluded is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant. * * * Application of the rule thus deflects the truthfinding process and often frees the guilty. *The disparity in particular cases between the error committed by the police officer and the windfall afforded a guilty defendant by application of the rule is contrary to the idea of proportionality that is essential to the concept of justice.* Thus, although the rule is thought to deter unlawful police activity in part through the nurturing of respect for Fourth Amendment values, if applied indiscriminately it may well have the opposite effect of generating disrespect for the law and administration of justice." (Emphasis added; footnotes omitted.)

In *Michigan* v. *DeFillipo* (1979), 443 U.S. 31, the Supreme Court held that where the arresting officers had abundant probable cause to believe that the defendant's conduct violated a presumptively valid city ordinance, the arrest of the defendant was lawful even though the city ordinance was subsequently declared unconstitutional. In addition, since the defendant's arrest was valid, the search of defendant's person incident to the arrest was proper and any evidence discovered during the search should not have been suppressed. The Supreme Court held evidence seized in a good faith arrest with probable cause (without a warrant) for violation of a law later declared unconstitutional is admissible.

In summation, in this long series of decisions, the Supreme Court has restricted the application of the exclusionary rule so that it is not coextensive with the Fourth Amendment. With each decision, the court had come closer and closer to formally adopting the good faith exception to the exclusionary rule. However, the first court to formally adopt the good faith exception to the Fourth Amendment was the Fifth Circuit Court of Appeals in *United States* v. *Williams* (C.A. 5, 1980), 622 F. 2d 830 (en banc), certiorari denied (1981), 449 U.S. 1127.

## IV

### The Good Faith Exception to the Exclusionary Rule

In *United States* v. *Williams, supra,* the Fifth Circuit explicitly recognized a reasonable good faith exception to the exclusionary rule. The court stated at 840:

"Sitting en banc, we now hold that evidence is not to be suppressed under the exclusionary rule where it is discovered by officers *in the course of actions that are taken in the good faith and in the reasonable, though mistaken, belief that they are authorized. We do so because the exclusionary rule exists to deter willful or flagrant actions by police, not reasonable, good-faith ones.*" (Emphasis added.)

In a thorough, well-reasoned opinion, the Fifth Circuit discussed the various Supreme Court decisions that support implicitly, at least, the good faith exception to the exclusionary rule. See, *e.g., Calandra, supra; Peltier, supra; Powell, supra; Janis, supra;* and *DeFillipo, supra.* In each of these cases as well as numerous others unmentioned herein, the court in *Williams* found authority to support the good faith exception to the exclusionary rule.

The facts in *Williams* reveal that a special agent of the Drug Enforcement Administration recognized defendant Williams at the Atlanta, Georgia airport as she departed from a nonstop flight from Los Angeles. This same officer had previously arrested the defendant in Toledo, Ohio for possession of heroin. That arrest led to a guilty plea by the defendant, then an appeal, at which time the defendant was released on bail pending the appeal. A condition of that release was that the defendant was to remain in Ohio. The agent was aware of the court order and arrested the defendant for violating the travel restriction of her release order pursuant to Section 3146, Title 18, U.S. Code. Pursuant to the arrest, heroin was found on her person and in her luggage. The defendant filed a motion to suppress.

The court denied the motion to suppress and applied the good faith exception to the facts. The court held at 846:

"* * * *This case presents the questions both of a 'good-faith mistake,'* an action under a reasonable factual error about an element of the crime defined in section 3146, *and a good-faith 'technical violation,'* an action under a reasonable interpretation of the arrest power under section 3146 that was subsequently reconstrued by our panel. *Williams is not on trial for bail jumping. Williams is on trial for possession of a large quantity of heroin. A good-faith mistake about the legal intricacies of bail jumping would not require exclusion of that heroin found in an incidental search.*" (Emphasis added.)

In its conclusion, the court in *Williams* forestalled any argument that the decision in the case would undercut the Fourth Amendment. The court stated at 847:

"Predictably, it will be argued that today's decision undercuts the fourth amendment. Not so; it concerns only the exclusionary rule, one device — but not the sole one — for enforcing the amendment, and a device that is already far from co-extensive with the amendment itself. *As for the exclusionary rule, insofar as we restrict its application, we do so only to conform that to its underlying purpose: to deter unreasonable or bad-faith police conduct.*" (Emphasis added.)

It was not until the United Supreme Court decided the case of *United States* v. *Leon, supra,* and its companion case of *Massachusetts* v. *Sheppard* (1984), 468 U.S. __, 82 L. Ed. 2d 737, that the court officially recognized the good faith exception to the exclusionary rule.

In *Leon,* a facially valid search warrant had been issued based upon information initially provided by a confidential informant of unproven reliability. The informant told a police officer about a possible drug trafficking operation. Based upon the information the police initiated an investigation involving surveillance of respondents' activities. An affidavit was made summarizing the police officers' observations and an officer prepared an application for a warrant to search three residences and respondents' automobiles for an extensive list of items.

The application for a warrant was reviewed by several deputy district attorneys and a facially valid search warrant was issued by a state court judge. The searches which followed produced large quantities of drugs and other evidence. Respondents were indicted on federal drug offenses, and filed motions to suppress the evidence seized pursuant to the warrant.

The district court granted the motions in part after an evidentiary hearing had been held. The court held that the affidavit did not establish probable cause. The court acknowledged that the officer had acted in good faith; however, the court refused to accept the government's argument that the exclusionary rule should not apply where evidence is seized in reasonable good faith reliance on a search warrant. The court of appeals affirmed, refusing to recognize the good faith exception to the rule. On a writ of certiorari before the United States Supreme Court, the government's only question was whether a good faith exception to the exclusionary rule should be recognized.

In *Leon,* the United States Supreme Court presented a brief history of the exceptions to the exclusionary rule discussing the idea of balancing the various factors and the idea of "totality of circumstances" which it had recently adopted in *Illinois* v. *Gates* (1983), 462 U.S. 213, rehearing denied (1983), 463 U.S. 1237. The court held at 689:

"'* * * [T]he balancing approach that has evolved in various contexts — including criminal trials — 'forcefully suggest[s] that the exclusionary rule be more generally modified to permit the introduction of evidence obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment.' *Illinois* v. *Gates, supra,* at __, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (White, J., concurring in the judgment)."

After a brief history of the various exceptions to the exclusionary rule, the Supreme Court stated at 692:

"As yet, we have not recognized any form of good-faith exception to the Fourth Amendment exclusionary rule. But the balancing approach that has evolved during the years of experience with the rule provides strong support for the modification currently urged upon us. As we discuss below, *our evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a war-*

rant issued by a detached and neutral magistrate leads to the conclusion that such evidence should be admissible in the prosecution's case-in-chief." (Emphasis added.)

The Supreme Court accorded great deference to the magistrate's determination when issuing a warrant. However, it was quick to point out that this deference is not absolute.

The court stated that it is the magistrate's responsibility to determine whether a warrant is sufficient. The exclusionary rule attempts to discipline the police officer who had relied in good faith on the magistrate's findings. The court held at 696-697:

"* * * In short, where the officer's conduct is objectively reasonable,

" 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; * * *'

"This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. *In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.* In the ordinary case, *an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.* '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.' *Id.,* [428 U.S.], at 498, 49 L. Ed. 2d 1067, 96 S. Ct. 3037 (Burger, C.J., concurring). *Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."* (Emphasis added; footnotes omitted.)

In its conclusion, the court recognized the need for the good faith exception to the exclusionary rule. However, the court also cautioned that an officer's reliance must be objectively reasonable. The court did not hesitate to state that it will continue to strictly enforce the requirements of the Fourth Amendment. The court held at 698:

"We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion. * * * Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable * * *." (Citations omitted.)

In *Leon, supra,* the warrant was constitutionally invalid because *the affidavit* did not establish probable cause. In the companion decision of *Sheppard, supra,* the warrant was constitutionally invalid because it did not correctly specify the items to be seized because of a technical error. As in *Leon,* the evidence was found to be admissible despite the constitutional violation, because of the officers' objectively reasonable, good faith reliance on the warrant.

At a pretrial suppression hearing, the trial judge ruled that notwithstanding the warrant was defective under the Fourth Amendment in that it did not particularly describe the items to be seized, the incriminating evidence could be admitted because the police had acted in good faith in executing what they reasonably thought was a valid warrant. At the subsequent trial, respondent was convicted. The Massachusetts Supreme Judicial Court held that the evidence should have been suppressed.

The United States Supreme Court granted certiorari and set the case for argument in conjunction with *Leon, supra.* Having already recognized the good faith exception to the exclusionary rule in *Leon,* the Supreme Court then held in *Sheppard* at 743-744:

"* * * [T]he sole issue before us in this case is whether the officers reasonably believed that the search they conducted was authorized by a valid warrant. *There is no dispute that the officers believed that the warrant authorized, the search that they conducted.* Thus, the *only question is whether there was an objectively reasonable basis for the officers' mistaken belief. Both the trial court,* App. 35a, *and a majority of the Supreme Judicial Court,* 387 Mass., at 503, 441 N.E. 2d, at 733; *id.,* at 524-525, 441 N.E. 2d, at 745 (Lynch, J. dissenting), *concluded that there was. We agree.*" (Emphasis added; footnote omitted.)

The court briefly examined the facts and concluded at 745 as follows:

"In sum, the police conduct in this case clearly was objectively reasonable and largely error-free. *An error of constitutional dimensions may have been committed with respect to the issuance of the warrant, but it was the judge, not the police officers, who made the critical mistake. * * *"* (Emphasis added.)

Accordingly, *Sheppard* and *Leon* both officially recognize the good faith exception to the exclusionary rule which was first adopted by the Fifth Circuit in *United States* v. *Williams, supra.*

V

Application of the Good Faith Exception to this Case

In the instant case, the trial court ruled that the evidence seized during the search should be suppressed for two reasons. First, the police failed to submit a written affidavit to obtain the warrant, as required by Crim. R. 41(C). Second, the officers did not testify under oath as required by the United States Constitution and the Ohio Constitution. This court holds that under the facts of this case, these defects do not warrant the suppression of evidence.

A

The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution state that "no warrant[s] shall issue but upon probable cause, supported by oath or affirmation." Section 14, Article I, of the Ohio Constitution provides in part:

"* * * [N]o warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized."

Further, Crim. R. 41(C) provides in part:

"A warrant shall issue under this rule *only on an affidavit or affidavits sworn to before a judge* of a court of record and establishing the grounds for issuing the warrant." (Emphasis added.)

In both *Leon* and *Sheppard,* an affidavit was filed in order to obtain the search warrant. The police had followed the proper and necessary procedure. In contrast, in this case, the police failed to follow the procedure set forth in Crim. R. 41(C).

When a search warrant is issued without the submission of a written affidavit, the question arises as to what effect, if any, does this violation have on the evidence seized pursuant to that warrant. This court has recognized that the suppression of evidence pursuant to the exclusionary rule applies only to those searches which were carried out in violation of an individual's constitutional rights. In *Kettering* v. *Hollen* (1980), 64 Ohio St. 2d 232, 234-235 [18 O.O.3d 435], this court stated:

"The exclusionary rule has been applied by this court to violations of a constitutional nature only. In *State* v. *Myers* (1971), 26 Ohio St. 2d 190, 196 [55 O.O.2d 447], this court enunciated the policy that the exclusionary rule would not be applied to statutory violations falling short of constitutional violations, absent a legislative mandate requiring the application of the exclusionary rule. In *State* v. *Downs* (1977), 51 Ohio St. 2d 47, 63-64 [5 O.O.3d 30], the violation of Crim. R. 41 with respect to the return of a search warrant was described as non-constitutional in magnitude and the exclusionary rule was not applied. Also, in *State* v. *Davis* (1978), 56 Ohio St. 2d 51 [10 O.O.3d 87], it was held that fingerprint evidence obtained in violation of a statute does not have to be excluded.

"It is clear from these cases that the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights."

In deciding whether the violation of Crim. R. 41(C) in the present case is of constitutional magnitude, a case construing a similar federal criminal rule offers guidance. In *United States* v. *Vasser* (C.A. 9, 1980), 648 F. 2d 507, certiorari denied (1980), 450 U.S. 928, two special agents of the Drug Enforcement Administration began a surveillance of Vasser's apartment. The agents suspected Vasser was using the apartment to illegally manufacture the drug phencyclidine. Based on their observations, the agents concluded that Vasser was manufacturing the drug and that the apartment should be searched.

It was an affidavit that was at issue in *Vasser.* The agents were observing Vasser's apartment from an empty townhouse directly across a parking lot. Their vantage point was visible from the kitchen in Vasser's apartment. The townhouse contained no furniture and lacked utilities. One of

the agents, armed with a flashlight and cassette recorder, entered a closet and proceeded to tape-record an affidavit. The agent delivered the tape to a United States magistrate and was sworn to the truth of the statements contained therein *after* the magistrate had listened to the entire tape. A search warrant was issued and executed. This procedure violated Fed. R. Crim. P. 41.

In determining whether the evidence seized as a result of the search should be suppressed, the court set forth the following analysis at 510:

"Our finding that Rule 41 does not sanction the precise method of submitting the affidavit, however, does not end our analysis. Suppression is not required in all cases where the issuance of a search warrant fails to conform to the dictates of Rule 41. *Only a 'fundamental' violation of Rule 41 requires automatic suppression, and a violation is 'fundamental' only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards.* * * * Violations of Rule 41 which do not arise to constitutional error are classified as 'non-fundamental.' 'Non-fundamental' noncompliance with Rule 41 requires suppression only where:

" ' "(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." ' *United States* v. *Radlick* [(C.A. 9, 1978), 581 F.2d 225], *supra,* at 228, quoting *United States* v. *Burke* [(C.A. 2, 1975), 517 F.2d 377], *supra.*" (Emphasis added; footnote omitted.)

The court in footnote 2 at 510 made it clear that deviations from the requirements of Rule 41 were not encouraged. But the court also added at 510:

"However, *we cannot fault the good faith ingenuity of the officers to the point where reversal is required. All interests sought to be protected by the fourth amendment and Rule 41 were safeguarded by the officers, the Assistant U.S. Attorney, and the Magistrate, even though the methods used were novel. The error, defect or irregularity did not affect any substantial rights* of Vasser. Rule 52(a), F.R. Cr. P." (Emphasis added.)

The court found that the technical failure to comply was not "fundamental" and that the affidavit complied with the spirit of Rule 41 because it provided a basis for a probable cause determination and established an adequate record to review the determination. *Id.* at 511. The court also held that the agent's use of a tape-recorded affidavit was not bad faith. Based on the urgency of the circumstances, the belief that the use of the cassette recorder would speed the process was held to be in good faith. *Id.*

In addition the court discussed the failure to administer the oath until after the magistrate had listened to the taped affidavit. The court held at 511:

"* * * Rule 41(c)(2)(D) specifically requires that the oath be given

prior to oral testimony in the case of an application for a telephonic warrant. It is not a general requirement for all warrants issued under Rule 41. We have already determined that the warrant issued here was not classifiable as a 41(c)(2) warrant. *In any event, the timing of the oath could not have caused any prejudice to Vasser within the meaning of Radlick. Consequently, we hold that the timing of the oath did not require suppression in this case.*" (Emphasis added.)

In the case *sub judice,* the failure to provide a written affidavit was not a violation of constitutional magnitude. Thus, it was not a fundamental violation. The actions of the Lorain police officers can be readily compared to the actions of the agents in *Vasser.* In both instances there was no bad faith evidenced and the urgency of the circumstances should be considered when examining the "technical" violation which has occurred herein.

In addition there is no evidence of prejudice and the violation was not intentional. Given the surrounding circumstances, the oral testimony was the most effective method to expedite the warrant. See *State* v. *Miller* (1977), 53 Ohio App. 2d 199 [7 O.O.3d 274].

A review of the testimony given by the two officers indicates that there was sufficient evidence provided to the magistrate for him to make a probable cause determination. All interests sought to be protected by the Fourth Amendment and Crim. R. 41 were safeguarded by the Lorain police officers and the magistrate. Therefore, there has been no fundamental violation and the oral affidavit complied with the "spirit" of Crim. R. 41. See *Vasser, supra.*

### B

Appellants' contention that the evidence should be suppressed because the officers' testimony was not given under oath is also without merit.

The transcript of the hearing reveals that *after* the officers had testified as to probable cause, the magistrate administered the oath; however, the tape recorder was not on. The prosecutor realized this discrepancy and requested the magistrate to administer the oath a second time. The magistrate proceeded to give the following oath:

"* * * Alright, please stand and raise your right hands, do you solemnly swear that the testimony *you are about to give* on to enable you to obtain a search warrant is the truth so help you God?" (Emphasis added.)

After the testimony had been transcribed, the magistrate certified that the officers had testified under oath. The failure of the magistrate to use the proper verb tense in administering the oath does not require this court to find that the oath was constitutionally infirm.

Assuming, *arguendo,* that this failure of the magistrate was a constitutional violation, the good faith exception to the exclusionary rule found in *Leon* should be adopted in this case.

In *Leon,* the court recognized that the exclusionary rule is a judicially created rule designed to safeguard Fourth Amendment rights. However,

the court recognized the substantial social costs which result from its application at 688-689:

" '* * * [The] unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury.' *United States* v. *Payner,* 447 U.S. 727, 734, 65 L. Ed. 2d 468, 100 S. Ct. 2439 (1980). An objectionable collateral consequence of this interference with the criminal justice system's truth-finding function is that some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains. Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system. *Stone* v. *Powell, supra,* at 490, 49 L. Ed. 2d 1067, 96 S. Ct. 3037. Indiscriminate application of the exclusionary rule, therefore, may well 'generat[e] disrespect for the law and the administration of justice.' *Id.,* at 491, 49 L. Ed. 2d 1067, 96 S. Ct. 3037. * * *' "

The court recognized that the objective of the exclusionary rule was to deter willful, or at the very least negligent, police conduct which deprived a defendant of some right. The refusal to admit evidence gained as a result of such conduct is to instill in the officers a greater degree of care toward the rights of the accused. See *id.* at 694-695. But the court recognized that the rule was useless when the police act in good faith, quoting to *Michigan* v. *Tucker, supra,* at 447.

Therefore, the Supreme Court recognized that the remedial objectives behind the exclusionary rule are not realized in situations where a violation of the Fourth Amendment was not due to police misconduct. The court continued at 696:

" '* * * In short, where the officer's conduct is objectively reasonable, 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that * * * the officer is acting as a reasonable officer would and should act under the circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.'* * *' " (Citation omitted.)

The court continued by defining the duties of the magistrate in this type of situation. The court held that the magistrate is responsible for determining the existence of probable cause and if it exists, to issue a warrant which satisfies the requirements of the Fourth Amendment. The court acknowledged that ordinarily it is not the responsibility of the officers to question the probable cause determination made by the magistrate or whether the warrant is technically sufficient. Where the officer's conduct in the course of a search and seizure is objectively reasonable and executed in good faith, excluding the evidence because the search warrant is found to be constitutionally invalid will not further the ends of the exclusionary rule in any appreciable way. Therefore, to penalize the officer for a magistrate's error is incorrect because it would not deter the officer from committing Fourth Amendment violations.

In *Sheppard, supra,* the court confirmed the holding in *Leon* and stated at 745:

"* * * [T]he police conduct in this case clearly was objectively reasonable and largely error-free. *An error of constitutional dimensions may have been committed with respect to the issuance of the warrant, but it was the judge, not the police officers, who made the critical mistake.* '[T]he exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges.' *Illinois* v. *Gates,* 462 U.S. __, __, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) (White J., concurring in the judgment). *Suppressing evidence because the judge failed to make all the necessary clerical corrections despite his assurances that such changes would be made will not serve the deterrent function that the exclusionary rule was designed to achieve.*" (Emphasis added; footnote omitted.)

Therefore, both *Leon* and *Sheppard* distinguish an error made by the issuing magistrate from a reasonable good faith reliance made by a police officer.

In the case before us, any error which may have occurred was made by the issuing magistrate and *not* by the police officers. This court recognizes that a magistrate is only a mere mortal and used the wrong verb tense. A slip of the tongue causing the issuing magistrate to say "the testimony you are about to give" and not say "the testimony you gave" should not determine the outcome of this case or justice in any case. It is readily apparent that the police officers were before the magistrate with their right hands raised to swear to what they had just told the judge, not to swear to the nothingness that followed. Indeed, at the suppression hearing, the officers testified that they believed that they had sworn an oath to their previous testimony.

Enforcement of the exclusionary rule suppressing evidence as a result of error by a magistrate can never deter future police misconduct. Everyone in this case made every effort to do the right thing under a very hurried time frame to circumvent the destruction of stolen motor vehicles and gather the evidence necessary to arrest the appellants.

In summation, the magistrate's failure to properly administer the oath was arguably a violation of constitutional magnitude. However, based on *Leon, supra,* the exclusionary rule is not to be applied where the officers conducting the search acted in objectively reasonable reliance on the warrant issued.

The record reveals that the officers seeking the warrant were under the impression that they took the proper oath. Further, once their testimony had been transcribed, they signed affidavits verifying the correctness of what they believed was their "sworn" testimony. The error which rendered the warrant defective was the magistrate's technical failure to use the proper words in administering the oath. The issuance of the oath was totally within the control of the magistrate. The officers who sought the warrant and executed the search indicated by their testimony

at the suppression hearing that they believed that the search was authorized by a valid warrant. Therefore, the officers were justified in their good faith reliance on the validity of the search warrant. The evidence supports the officers' belief that their oaths had been properly administered. Based upon the United States Supreme Court's recognition of the good faith exception to the exclusionary rule, we now apply that exception in the case *sub judice.*

Accordingly, appellants' proposition of law is without merit, and the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., HOLMES, DOUGLAS and WRIGHT, JJ., concur.

SWEENEY and WISE, JJ., dissent.

WISE, J., of the Fifth Appellate District, sitting for LOCHER, J.

PATTON, J., of the Eighth Appellate District, sitting for C. BROWN, J.

SWEENEY, J., dissenting. I must dissent from the overly broad syllabus employed by the majority, because I fear that its eager embrace of the so-called good faith exception to the exclusionary rule has opened a veritable Pandora's Box of potential abuse, at the expense of fundamental constitutional rights embodied in both the United States and Ohio Constitutions. In particular, the second paragraph of the syllabus of the majority's opinion is most troubling. The plain import of this syllabus paragraph is that search warrants are merely a technical formality, and that the constitutional insufficiency of any particular search warrant may be overcome by a nebulous assertion that it was executed in good faith. Unfortunately, it seems that in the interests of expediency, the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution have been reduced by the majority into nothing more than a "form of words."

The underlying tone of the majority's thorough yet tortured analysis of the exclusionary rule seems to indicate that the constitutional provisions and the exclusionary rule are mutually exclusive doctrines. Such should not be the case given this court's prior pronouncements in this regard.

As this court recently noted in *State* v. *Burkholder* (1984), 12 Ohio St. 3d 205, at 207:

"While we encourage the zealous enforcement of the law by our police officers, we must acknowledge that the potential for abuse is present, and that *this potential for abuse must be deterred in order to maintain the constitutional guarantees that underlie the exclusionary rule.* \* \* \*" (Emphasis added.)

While deterrence of police misconduct is most certainly a central aim of the exclusionary rule, it is by no means the sole consideration supporting its continued viability. The fundamental rights prohibiting unreasonable searches and seizures contained in both the state and federal Constitutions require that a constitutional remedy be imposed in order to ensure that such rights will not be trampled in the interests of convenience. Such is the essence of the exclusionary rule.

In its haste to adopt the "good faith exception" to the exclusionary rule, the majority conspicuously ignores this court's holding in *Akron* v. *Williams* (1963), 175 Ohio St. 186 [23 O.O.2d 466], where we stated at 189-190:

"* * * Even as an illegal search may not be made legal by the evidence found thereby, neither can it be said that where the officers are illegally on the premises as a result of an invalid warrant they can justify their illegal presence by a subsequent occurrence.

"Such a holding would be equivalent to giving the authorities a free license to enter one's property without legal justification and then have such entry legalized by subsequent events. Such is not so in our present democracy. The courts must protect the fundamental rights of its citizens even though in doing so the guilty may at times escape punishment. This is the penalty which a free society must pay to protect its freedom. * * *"

In view of the majority's holding in the case at bar, it seems that the *Williams* case has been summarily cast aside without even an acknowledgement. In any event, it is my belief that the majority has latched upon the "good faith exception" because it incorrectly perceives the exclusionary rule as an unwarranted albatross in the pursuit of effective law enforcement.

Since its inception, the exclusionary rule has been the subject of much discussion and scholarly legal debate too numerous to exposite here. However, I find persuasive the insightful analysis rendered by the late Justice Potter Stewart concerning the matter:

"Much of the criticism leveled at the exclusionary rule is misdirected; it is more properly directed at the fourth amendment itself. It is true that, as many observers have charged, the effect of the rule is to deprive the courts of extremely relevant, often direct evidence of the guilt of the defendant. But these same critics sometimes fail to acknowledge that, in many instances, the same extremely relevant evidence would not have been obtained had the police officer complied with the commands of the fourth amendment in the first place." Stewart, The Road to *Mapp* v. *Ohio* and Beyond: The Origins, Development and Future of the Exclusionary Rule in Search-and-Seizure Cases (1983), 83 Colum. L. Rev. 1365, 1392. See, also, *United States* v. *Leon* (1984), 468 U.S. __, 82 L. Ed. 2d 677, 702-712 (Brennan, J., dissenting).

In reviewing the facts of the instant cause as applied to the majority opinion herein, I find several disturbing facets which must be pointed out,

since I feel the majority has ignored the letter, as well as the spirit, of the Constitution and Rules of Criminal Procedure.

Section 14, Article I of the Ohio Constitution provides in full:

"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

Crim. R. 41(C) provides in relevant part:

"A warrant shall issue under this rule *only on an affidavit or affidavits sworn to before a judge of a court of record* and establishing the grounds for issuing the warrant. * * * Before ruling on a request for a warrant, the judge may require the affiant to appear personally, and may examine under oath the affiant and any witnesses he may produce. Such testimony shall be admissible at the hearing on a motion to suppress if taken down by a court reporter or recording equipment, transcribed *and made part of the affidavit.* * * *" (Emphasis added.)

In comparing the constitutional provision with the criminal rule, I believe that even a cursory analysis of the criminal rule reveals that it was intended to be a codification of the guarantees contained not only in the foregoing constitutional provision, but also the Fourth and Fourteenth Amendments to the United States Constitution.

Nevertheless, the majority opinion emasculates the legal efficacy of this criminal rule and renders it into a mere "form of words" which can be readily ignored, with impunity, at the whim of the officers and the "neutral and detached magistrate" who issues the warrant. Such a position is clearly contrary to the rule's directives.

With respect to the majority's dispensation of the written affidavit requirement, I find *United States* v. *Vasser* (C.A. 9, 1980), 648 F. 2d 507, certiorari denied (1981), 450 U.S. 928, to be inapposite to the cause before us.

Assuming *arguendo* that the relaxation of the parallel federal rule was necessary in *Vasser* given the alleged exigent circumstances involved therein, the instant cause presents a markedly different situation than was the case in *Vasser*. The cause *sub judice* did not involve the apparent urgency to dispense with the requirement of a written warrant as was the case in *Vasser* because, here, it was not clearly demonstrated that time was of the essence.

In my opinion, the failure of the officers to present a written affidavit, as is contemplated by Crim. R. 41, rendered the resultant warrant invalid since this criminal rule permits oral testimony only as a supplement to the written affidavit. See *State* v. *Misch* (1970), 23 Ohio Misc. 47 [52 O.O.2d 99].

Even if it were to be assumed that the "oral affidavit" was permissible under the Criminal Rules and was therefore not an error of constitutional

magnitude, the absence of a valid oath or affirmation is indeed an error of constitutional dimensions. Thus, the majority's reliance on *Kettering* v. *Hollen* (1980), 64 Ohio St. 2d 232 [18 O.O.3d 435], is severely misplaced, since that case did not involve an error of constitutional magnitude.

While the majority characterizes the absence of an oath as nothing more than "[a] slip of the tongue," I am fearful that the majority's relaxed standard in this context may be used to excuse more egregious violations of the oath or affirmation requirement in future cases. Arguably, the magistrate in the instant cause merely recited the incorrect tense of the verb "to give." Nevertheless, I am reluctant to excuse this error given the nuances of the English language in general. It is common knowledge that one word such as "no" or "not," or a misplaced comma, can completely change the meaning or effect of any particular phrase or sentence. In any event, simply because the search in issue produced valuable evidence against the accused, this court should not gloss-over the oath requirement by resort to the "good faith exception." Until today, it has never been this court's policy that the end justifies the means in search and seizure cases. See, *e.g., Akron* v. *Williams, supra,* at 190.

In conclusion, I believe that the Constitution of Ohio requires that we vigorously enforce the fundamental right prohibiting unreasonable searches and seizures as a check and balance on the coercive power of the government. Anything short of this may ultimately reduce this constitutional guarantee to an anachronistic cliche.

Therefore, I would reverse the decision of the court of appeals and reinstate the decision of the trial court in suppressing the evidence in issue.

WISE, J., concurs in the foregoing dissenting opinion.