[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Donald Paul Napier appeals from a judgment of conviction and sentence entered by the Montgomery County Court of Common Pleas after a jury found Napier guilty of seven counts of selling cocaine in violation of R.C. 2925.03. Napier was indicted after participating in seven different cocaine transactions with police and a police informant that occurred over a period of six weeks. Napier contends on appeal that the trial court erred in giving improper instructions to the jury on the quantity of cocaine involved in each count against him. He also claims error in the jury's failure to enter a factual finding of the amount of cocaine on their verdict forms. Finally, Napier contends that police officers were obligated to arrest him after they witnessed his first crime and, therefore, the additional counts against him should be voided as a matter of public policy. Reviewing Napier's assignments of error, we conclude that the trial court did not err in instructing the jury, and there was no reversible error in connection with the verdict forms. Because Napier asserted no violation of a constitutional right, his allegations regarding the breach of public policy were insufficient to merit reversal of his criminal convictions. Accordingly, we affirm the judgment of the trial court.
 I.
The pertinent facts of the case are as follows. In February of 1996, Huber Heights police arrested Lonnie Crase for trafficking in cocaine. Following, his arrest, Crase agreed to cooperate with the police and Montgomery County Prosecutors in return for a reduced sentence. Crase informed the police that he would assist them in an investigation of appellant, Donald Napier, from whom he had purchased cocaine in the past.
On May 3, 1996, Crase and a police detective purchased one-eighth of an ounce (3.5 grams) of cocaine from Napier as part of an undercover operation. On that date, Napier delivered the cocaine to Crase and the detective in an automobile that contained his two minor children. Police later arranged six more controlled purchases of cocaine from Napier over the following six weeks. All but the last of these transactions involved approximately half an ounce of cocaine, varying between twelve and eighteen grams.
In the last transaction, which was scheduled for June 13, 1996, Napier agreed to supply one and a half ounces (42 grams) of cocaine to Crase. This sale was not completed, however, because police decided to cancel the transaction. Hoping that Napier would become an informant, the police wanted to arrest him quietly, away from his home, so that knowledge of his arrest would not spread to his contacts. Police canceled the June 13 sale because Napier would not agree to a place and time for the sale that suited these police objectives.
On July 30, 1996, the Montgomery County Grand Jury handed down a seven-count indictment against Napier. The first count was for selling cocaine in an amount less than the minimum bulk and within one hundred feet or within the view of any juvenile against R.C. 2925.03(A)(1). The second, third, fourth, fifth, and sixth counts all alleged violation of R.C. 2925.03(A)(5) for selling cocaine in an amount exceeding bulk, but less than three times bulk. The seventh and final count was for offering to sell cocaine in an amount exceeding three times bulk, but less than one-hundred times bulk, in violation of R.C. 2925(A)(7). Violation of R.C. 2923(A)(1) within the view of a minor constituted a second degree felony. Violation of 2923(A)(5) was also a second degree felony, requiring three years of actual incarceration. Finally, violation of R.C. 2925(A)(7) constituted a first-degree felony with five years of actual incarceration.
Napier was arrested shortly after the grand jury handed down its indictment. He was tried before a jury between March 24 and 26, 1997. At trial, Napier raised the defense of entrapment. On March 26, the jury found Napier guilty on all seven counts, rejecting his affirmative defense. On April 10, 1997, the trial court sentenced him to six concurrent terms of imprisonment, one term of between two and fifteen years, and five terms of between three and fifteen years with three years of actual imprisonment. In addition, the court sentenced him to serve a consecutive term of between five and twenty-five years on Count Seven of the indictment, with five years of actual imprisonment. Napier now appeals from the judgment of the trial court.
 II.
With his first assignment of error, Napier argues that the trial court erred by failing to instruct the jury on the amount of cocaine that constituted bulk under R.C. 2925.03. He also objects that the jury did not make a finding on any count as to how much cocaine had been sold or offered for sale. As a consequence, Napier asserts, each finding of guilt should be treated as a crime of the least degree possible, which under these circumstances would be a violation R.C. 2925.03(A)(1).
The trial court gave the jury spoken instruction with regard to each count against Napier. For Count One, the court gave the following instruction:
 Ladies and gentlemen, Count I of the indictment charges the defendant with Aggravated Trafficking in Drugs. Before you can find the defendant guilty you must find beyond a reasonable doubt that on or about the 3rd day of May, 1996 and in Montgomery County, Ohio the defendant knowingly sold or offered to sell cocaine in an amount less than ten grams.
 The court gave essentially the same instruction on each of the remaining six counts, changing the dates of each crime and the quantity of cocaine sold. Concerning each of the five counts of violating R.C. 2925.03(A)(5), the court expressed the requisite quantity as "an amount equal to or exceeding ten grams but less than thirty grams." Then, for Count Seven, the court's instruction stated "an amount equal to or exceeding thirty grams but less than 100 grams."[1] These instructions were nearly identical to those approved by the Ohio Judicial Conference and provided at 4 Ohio Jury Instructions (1996) 388-89, Section 525.03.
Napier argues that the instructions were improper because the court should have defined the word "bulk" as it was used in the indictment. He contends that the jury could not have made a reasoned determination of his guilt of any crime other than trafficking in violation of R.C. 2925.03(A)(1) unless they understood that "bulk" indicated ten grams of cocaine. We disagree.
We note that appellant's trial attorney made no objection to the jury instructions at trial. Ordinarily, a criminal defendant's failure to object to a jury instruction constitutes a waiver of any claim of error on appeal based on that instruction.State v. Long (1978), 53 Ohio St.2d 91, 96-97. Under these circumstances, an appellate court will notice only plain error under Crim.R. 52(B). Furthermore, plain error exists in regard to an improper jury instruction only if the outcome of the trial clearly would have been different in the absence of error. Id.
In the trial below, the amounts of cocaine that were involved in each sale of cocaine were never in dispute. Napier stipulated to the accuracy of the lab reports that indicated the amount of cocaine in all of the sales greater than bulk. The jury received these reports as state's exhibits. It is noteworthy, also, that all five reports stated that the "[b]ulk amount of Cocaine is 10 grams." Then, in his trial testimony, Napier admitted that the last transaction was supposed to involve one and a half ounces of cocaine. Thus, it does not seem at all likely that the jury would have reached a different result if the instructions had been given as Napier now prefers.
Moreover, although the trial court did not define bulk, it did inform the jury of the amount of cocaine that they would need to find in order to convict the defendant on each count of the indictment. In essence, the trial court made the simple calculations that the jury would otherwise have been required to perform. Rather than rendering the instructions confusing, as Napier claims, the court's approach produced instructions that were very simple and easy to understand. Undoubtedly, the simplicity of these instructions explains why the Ohio Judicial Conference adopted this method over one that defined the bulk amount and then required the jury to compute the relevant fractional or multiple part of bulk. We see no error in the instructions as they were given. Clearly there was no plain error.
Napier raises a separate, but related, argument when he asserts error in connection with the jury verdicts. He contends that the verdict forms given to the jury were improper because they did not require the jurors to enter the amount of cocaine involved in each sale or offer. Instead, the forms asked the jurors to pen either "guilty" or "not guilty" before the words: "of the offense of Aggravated Trafficking in Drugs as charged in the indictment." Napier cites no authority in support of the proposition that jurors are required to enter a finding of the amount of drugs involved when they find a defendant guilty of violating R.C. 2925.03. Other appellants, however, have raised similar arguments in Ohio courts of appeal on a number of occasions. See, e.g., State v. McDonald (Jan. 12, 1994), Lorain App. No. 004720, unreported, at 2-3; State v. Davis (Jan 27, 1992), Ross App. No. 1746, unreported, at 6-8; State v. Smith
(March 26, 1987), Montgomery App. Nos. 9617, 9636, unreported, at. In those cases, the appellants derived their arguments from either the provisions of R.C. 2925.03(G) or those of R.C.2945.75(A)(2). See, e.g., McDonald, supra.
R.C. 2925.03(G), as in effect before July 1, 1996 and during the time Napier committed his crimes, provided as follows:
 (G) When a person is charged with possessing a bulk amount or a multiple of a bulk amount, the jury, or the court trying the accused, shall determine the amount of the controlled substance involved at the time of the offense and, if a guilty verdict is returned, shall return the findings as part of the verdict. In any such case, it is unnecessary to find and return the exact amount of the controlled substance, and it is sufficient if the finding and return is to the effect that the amount of the controlled substance involved is a bulk amount or the requisite multiple of a bulk amount, or that the amount of the controlled substance involved is less than a bulk amount or the requisite multiple of a bulk amount.
 At least one court has concluded that subsection (G) does not apply to crimes involving the sale of controlled substances. State v. Manross
(July 10, 1987), Ashtabula App. No. 1295, unreported, at 3, reversed on other grounds (1988), 40 Ohio St.3d 180. The Manross court reasoned that the subsection, on its face, appears to apply only when a person is charged with possession of a controlled substance. Id. Sale and possession are treated differently elsewhere within the statute. See R.C. 2925.03. Nevertheless, other courts have not recognized this distinction. See, e.g., State v. Allen (Oct. 2, 1982), Warren App. No. 70, unreported at 2 (modifying a judgment of conviction under R.C. 2925.03(A)(6) and (A)(7) for failure to abide by R.C. 2925.03(G)). As now amended, the Revised Code plainly extends this fact-finding requirement to crimes of both possession and sale of controlled substances. See R.C. 2925.03(G) and 2925. 11(G).
Criminal defendants have also argued that R.C. 2945.75(A)(2) requires these same factual findings be entered into the verdict. That statute provides in relevant part:
 (A) When the presence of one or more additional elements makes an offense one of more serious degree:
* * *
 (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.
 At least one court has found that R.C. 2945.75 does not apply when a criminal defendant is charged only with trafficking in a certain amount and there is no instruction given on a lesser included offense. See McDonald, supra, at 4.
We need not determine if the trial court erred in failing to follow one of these two statutes. As Napier concedes in his appellant's brief, where the indictment — as it did in the instant case — charges that the accused sold a controlled substance in the bulk amount or some requisite multiple of bulk, it is sufficient that the jury's verdict state that accused is guilty as charged in the indictment. See State v. Schultz (July 7, 1983), Cuyahoga App. No. 45511, unreported, at 3; see also State v. Smith, supra,
at 2 (applying Schultz on review of a verdict rendered after a bench trial). Even if there is error in failing to enter a specific finding in the verdict under R.C. 2925.03(G) and2945.75(A)(2), under these circumstances it is not reversible error. "The failure of the verdict forms to comply strictly with R.C. 2945.75(A)(2) does not constitute reversible error when the verdicts incorporate the language of the indictments, the evidence overwhelmingly shows the presence of the aggravating circumstance, and defendants never objected at trial to the form of the verdicts." Davis, supra, at 7-8.
Napier contends, however, that his case is distinguishable because the trial court did not define the meaning of bulk as it appeared in the indictments. This distinction cannot hold. Following the trial court's instructions, the jurors had to find beyond a reasonable doubt that Napier sold or offered to sell between 10 and 30 grams of cocaine for each count of violating R.C. 2925.03(A)(5), and 30 grams or more for the count of violating R.C. 2925.03(A)(7). Otherwise they were required to find him not guilty. Because the jury reached this determination, we cannot see any way in which Napier was prejudiced by the lack of a specific finding in the verdict repeating that determination. See McDonald, supra, at 3. Accordingly, we find that Napier's first assignment of error is not well taken, and it is, therefore, overruled.
 II.
With his second assignment of error, Napier contends that the undercover operation that permitted him to engage in drug transactions with the police and their informant on seven different occasions violated state public policy. Thus, he asks us to void all of his convictions except for the one arising from the first sale on May 3, 1996. Napier explains here that he is not reasserting the claim of entrapment that was rejected by the jury. He contends, instead, that the extended nature of the police investigation of his activities rendered their conduct intolerable and that, as a consequence, we should deny them the fruits that misconduct.
We note that Napier did not raise this argument in the trial court. Generally, "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called to trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Awan (1986), 22 Ohio St.3d 120, 122. This court may consider an argument that has been waived, however, if it finds plain error. See In re M.D. (1988), 38 Ohio St.3d 149, syllabus. For this reason, we will review the merits of Napier's argument to see if it reveals plain error in the trial court's judgment.
In arguing his second assignment of error, Napier does not claim that police violated any of his constitutional rights. He also cites us no authority that would permit an appellate court to reverse a criminal conviction based on a police investigation that violated public policy, but not a constitutional right of the accused. Even were we to assume that the police investigation of Napier did violate some element of public policy, Napier does not explain why that element should override other fundamental tenets of public policy, such as the proposition that those who sell cocaine should be prosecuted, as that policy is expressed in R.C.2925.03, or that those convicted of crimes should serve out their sentences.
Statutes are "the legislature's expression of public policy."Painter v. Graley (1994), 70 Ohio St.3d 377, 385. Nevertheless, the Ohio Supreme Court has refused to apply the exclusionary rule in criminal cases where state law has been violated, but not a constitutional right. State v. Wilmoth (1986), 22 Ohio St.3d 251,262. From this precedent, we may reason that a criminal conviction will not be overturned on public policy grounds, absent a violation of constitutional magnitude. Napier has asserted no such violation. Instead he cites R.C. 2935.03(A) as creating a duty on the part of police officers to arrest individuals whom they find violating the law. Such a duty, however, vests no right — certainly none of constitutional magnitude — in the person whom police find violating the law. The law does not require the police to stop a criminal defendant for his own sake, before he engages in further incriminating acts. Napier also cites R.C.3719.141. Nevertheless, that statute applies only to police sale of controlled substances, not the purchase of narcotics, as in this case
Finally, even If we were to treat Napier's second assignment of error as somehow raising a claim of violation of his due process rights, we would find no constitutional violation. This court has previously rejected very similar claims by criminal appellants whose entrapment defenses failed to sway juries. SeeState v. Delisio (Sept. 3, 1992), Greene App. No. 91-CA-46, unreported, at 7; State v. Feltner (Aug. 16, 1989), Miami App. No. 88-CA-34, unreported, at 2-4. In Feltner, we considered the argument that a police investigation of drug sales amounted to outrageous governmental conduct. Therein, we noted that, if an appellant can show no violation of a protected right, in order to sustain a constitutional claim, he must show that police conduct otherwise shocks the conscience. Supra, at 3. The police investigation in this case was neither extraordinary nor shocking. In other Ohio cases, investigations involving multiple purchases from a single defendant have resulted in multiple convictions for the traffickers. See, e.g., State v. Hackworth (1992), 80 Ohio App.3d 362,363; State v. Krivitskiy (1990), 70 Ohio App.3d 293,294 (twenty-eight counts resulting from a sting operation conducted over nine months). Napier provides us with no compelling reason to deny police what appears to be a common and useful technique of investigation.
For the foregoing reasons, we overrule Napier's second assignment of error. Having overruled all assignments of error raised by the appellant, we affirm the judgment of the trial court.
Judgment affirmed.
KERNS, J., and MILLIGAN, J., concur.
(Hon. Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District and Hon. John R. Milligan, Retired from the Court of Appeals, Fifth Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Cheryl A. Ross
R. Daniel Sykes
Hon. Mary Donovan
[1] Counts Seven of the indictment alleged violation of R.C. 2925.03(A)(7) which applies to one who sells or offers to sell "a controlled substance in an amount equal to or exceeding three times the bulk amount, but in an amount less than one hundred times that amount." Because the bulk amount of cocaine is ten grams, under R.C. 2925.01(E)(1), the upper-level limit for (A)(7) is one thousand grams, not one hundred. Appellant assigns no error in this regard, however. Nor could it have had any conceivable effect on the outcome of the trial since no amount of cocaine at issue ever approached one hundred grams.