[Cite as *State v. Terrell*, 2013-Ohio-124.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY

STATE OF OHIO     :

          :    Appellate Case No.   2011-CA-57

    Plaintiff-Appellee   :

          :    Trial Court Case Nos. 10-CR-705

v.          :           11-CR-142

          :

ANDRE TERRELL    :    (Criminal Appeal from

          :     Common Pleas Court)

    Defendant-Appellant :

          :

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of January, 2013.

. . . . . . . . . . .

LISA M. FANNIN, Atty. Reg. #0082337, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, Post Office Box 1608, Springfield, Ohio 45501
    Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. #0067714, Robert Alan Brenner, LLC, Post Office Box 341021, Beavercreek, Ohio 45434-1021
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}   Andre Terrell appeals from his conviction and sentence on charges of cocaine possession (more than one-thousand grams), crack cocaine possession (more than twenty-five

grams), and ecstacy possession.

{¶ 2}    The first two convictions were first-degree felonies due to the quantity of drugs involved. The ecstacy conviction was a fifth-degree felony. Prior to sentencing, the trial court found that Terrell qualified as a major drug offender under R.C. 2929.01(W). It then imposed an aggregate prison term of twenty-nine years, which included ten years for the major-drug-offender specification, plus a $20,000 fine and a fifteen-year driver's license suspension. This appeal followed.

{¶ 3}    Although Terrell advances ten assignments of error, we will focus on the second one, our disposition of which renders moot all but one other issue. In his second assignment of error, Terrell contends the trial court erred in overruling a pre-trial suppression motion. Specifically, he claims the trial court erred in finding that a search-warrant affidavit established probable cause to search a residence at 239 East Grand Avenue in Springfield, Ohio, where police found the drugs at issue.

{¶ 4}    The record reflects that Detective Ronald L. Velez appeared before a judge on June 1, 2010, and requested a warrant to search 239 East Grand Avenue, Springfield, Ohio, for cocaine, drug paraphernalia, criminal tools, drug money, and other items.   In support of the request, Velez provided an affidavit. After setting forth his qualifications, he averred:[1]

> 2. In April 2010, the Dayton Police Department Narcotics Unit TASK FORCE began an investigation of a drug trafficking organization hereafter referred to as a DTO, responsible for importing and distributing cocaine, crack cocaine, in and around Dayton, Ohio. Investigators have identified several

---

[1]Because the adequacy of the search-warrant affidavit is central to the outcome of the second assignment of error, we quote the affidavit at length.

individuals within this DTO and the locations associated with their criminal enterprise. This TASK FORCE has identified members operating in the area through intelligence gathering and from speaking with other law enforcement investigators, information received from reliable Confidential Sources, as well as encounters these subjects have had with Law Enforcement. We have learned that Andre D. Terrell, Demetrius Beckwith, and Jwan Moreland, along with others are currently committing and have committed drug related crimes in Dayton, Ohio and the surrounding area. These individuals have been identified as participating directly or indirectly in this DTO. Our investigation has revealed that Terrell, Beckwith, Moreland and others are responsible for narcotics trafficking in Dayton, Ohio and Springfield, Ohio area and attempting to conceal their illicit profits derived from drug trafficking utilizing a business.

3. On or about April 6, 2010, Detective Kevin Phillips and I conducted a trash pull at 4403 Danado Drive, Dayton, Ohio 45406. The City of Dayton trash receptacle was placed and left on the public street in front of the residence and several bags of discarded trash were recovered. During a check of the trash we recovered 1 small Ziploc baggie with numerous other baggies inside, 3 of which were tied off in a knot. The baggies were all wet and it appeared they had been rinsed out. After drying out the baggies a field test with cobalt reagent was done on the baggies. The test was positive for cocaine residue on all of the discarded baggies from 4403 Danado Dr. Dayton, Ohio 45406.

4. On May 28, 2010, the affiant contacted the Miami Valley Regional

Crime Laboratory and learned the cocaine seized from April 6, 2010 was analyzed and found to contain cocaine residue, (Sch.II).

5. On May 12, 2010, members of the Drug Enforcement Administration, (DEA), along with other state and local agencies served search warrants relating to drug trafficking and money laundering at numerous locations in Montgomery County, Ohio. Beckwith was encountered inside one of the residences by Federal Agents. Federal Agents seized a handgun and a motor vehicle from Beckwith as a result of their investigation.

6. On May 14, 2010, Detective Michael Fuller and I met with a confidential source hereafter referred to as CS#1. CS#1 has provided information which has been verified through independent investigation. CS#1 stated that Beckwith, Terrell and Moreland are working together as mid-level to kilo level cocaine distributors. CS#1 stated that this DTO is responsible for distributing drugs in the Dayton and Springfield Ohio area. CS#1 stated that he/she has obtained numerous ounces of cocaine and crack cocaine from Beckwith and Terrell. CS#1 stated that he/she has distributed approximately 9 ounces of cocaine and or crack cocaine per week for Beckwith and Terrell since approximately August, 2009. CS#1 stated he/she has picked up illegal drugs at 4403 Danado Avenue, Dayton Ohio 45406, 239 E. Grand Avenue, Springfield, Ohio 45505, and 1335 Miami Chapel Avenue, Dayton, Ohio 45417, and at several parking lots within the city limits of Trotwood, Ohio. CS#1 stated that he/she has been inside the residence at 4403 Danado Avenue

and 1335 Miami Chapel Avenue, where he/she has seen very large amounts of cocaine, crack cocaine and money on the kitchen table.

7. CS#1 directed these Detectives to 4403 Danado Avenue, Dayton Ohio 45406, 239 E. Grand Avenue, Springfield Ohio 45505, and 1335 Miami Chapel Avenue, Dayton, Ohio 45417. CS#1 identified these locations as being utilized by this DTO for the storage and distribution of the illegal narcotics. CS#1 stated that Terrell and Beckwith also utilize these locations to conduct drug transactions. CS#1 stated that he/she picked up numerous ounces of crack cocaine and returned payment for the drugs he/she distributed for Terrell and Beckwith to these locations.

8. CS#1 stated that Beckwith is utilizing a business which he was in the process of starting to launder his drug proceeds. CS#1 stated that he/she only had knowledge of the business as possibly being a trucking company located on N. Gettysburg Avenue, Dayton, Ohio. Detective Fuller and your affiant conducted surveillance on 4403 Danado Avenue, Dayton, Ohio. While conducting surveillance, a 2005 green Cadillac Escalade bearing Ohio plate ETD2665 was seen parked in the driveway. This vehicle is registered to Thelma Turner. This vehicle has been identified throughout this investigation as one of the vehicle[s] used and driven by Demetrius Beckwith. Several days later, this vehicle was observed parked at 2403 N. Gettysburg Avenue, Dayton, Ohio 45406. A check was conducted with Dayton Power and Light Company. The listed subscriber for the electric at this location was Demetrius Beckwith

the listed business name as being Beckwith Trucking.

9. CS#1 stated that Beckwith and Terrell own and drive numerous vehicles including: ETD2665 a 2005 Cadillac Escalade parked in the driveway of 4403 Danado Av. Dayton, Ohio 45406. This vehicle is registered to Thelma Turner 4403 Danado Av. Dayton, Oho 45406. CS#1 stated that Beckwith and Terrell have purchased and used numerous other vehicles to transport drugs.

10. CS#1 stated that Jwan Moreland is part of the organization but not an equal partner, but does deal, distribute and transport cocaine and crack cocaine for Beckwith and Terrell. CS#1 stated that he/she received numerous ounces of crack cocaine which he/she referred to as being "fronted" from Demetrius Beckwith and Andre Terrell. The term "fronted" is a common term used by narcotic traffickers and defined as being provided with drugs for payment at a later date. CS#1 stated that he/she distributes the drugs for Terrell and Beckwith and then brings them the proceeds. CS#1 stated that Terrell and Beckwith received $1,000 per every ounce of crack cocaine the CS distributed.

11. An Accurint Law Enforcement check on Terrell under the address summary identified 1 Oak St. Trotwood, Ohio 45426 as being utilized by Terrell. This area is consistent with the area Terrell would come from when he/she met the CS#1 at numerous locations or parking lots in the City limits of Trotwood, Ohio. While Detective Fuller and I were conducting surveillance of 1 Oak St. Trotwood Oho 45426, we observed several vehicles at this address. A Gold Chevy Venture Van Ohio plate ERX4032. A gold/gray Chevy

Avalanche Ohio plate DDN1988. Also observed was a blue Ford Expedition ERW6995. A check was completed through the Ohio Bureau of Motor Vehicles on these vehicles. The gray 2003 Chevy Avalanche Ohio license plate DDN1988 is registered to a Brent W. Stone of 7509 Dayton Liberty Rd. Dayton, Ohio 45418. The 2001 blue Ford Expedition Ohio license plate of ERW-6995 is registered to Brooke M. Terrell of 4403 Danado Av. Dayton, Ohio 45406. The gold Chevy Venture van Ohio plate ERX3042 is registered to Janelle Brooke Barker of 5653 CO RD. 12 Proctorville, Ohio 45669. CS#1 described two vehicles utilized by Terrell and his wife Brooke Terrell to transport illegal narcotics as being a gold and gray Chevy Avalanche truck and a blue Ford Expedition Sport Utility Vehicle. These 2 vehicles are the same ones observed at 1 Oak St. Trotwood, Ohio 45426 by Detective Fuller and your affiant.

12. A Subpoena for subscriber information was obtained and served on the Dayton Power and Light Company, (DP&L), utility provider. The information returned from (DP&L) listed the subscriber information for these locations listed below. The information obtained from the (DP&L) reflects the most recent subscriber information for the utility service.

a. 4403 Danado Avenue, Dayton Ohio 45406. The listed subscriber and resident is Rhonda G Beckwith. Identified by CS#1 as a residence used as a possible stash house. Identified during our investigation as being a residence used by Beckwith

and Terrell to conduct drug transaction.

b. 1335 Miami Chapel, Dayton, Ohio 45417. The listed subscriber and resident is India S Boyd. Identified by CS#1 as a residence used as a possible stash house. Identified during our investigation as being a residence used by Beckwith to conduct drug transaction.

c. 2403 N Gettysburg Av, Dayton, Ohio 45406. The listed subscriber and resident is Demetrius Beckwith. Identified during our investigation as being a business used by Beckwith and Terrell to launder their drug proceeds.

d. 1 Oak St. Trotwood, Ohio 45426. The listed subscriber and resident is Andre Terrell. Identified during our investigation as being the residence utilized by Terrell.

13. The Affiant further states that he has good reason and probable cause to believe that within the residences described above, which are the principal locations listed, have been identified as being used by this DTO for distribution and storage of illegal narcotics from and between the residences and properties listed above.[2]

(Suppression Tr. at Def. Exh. C).

---

[2] A lengthy fourteenth paragraph of Detective Velez's affidavit adds that he "is familiar with the modus operandi of persons involved in the illicit distribution of controlled substances" and that he knows various "common practices" of "drug traffickers and drug distributors." This concluding paragraph identifies and describes those practices in general terms, without specific reference to the parties, or the locations, identified in his affidavit. We do not question that Detective Velez has extensive experience concerning drug trafficking.

{¶ 5}    Detective Velez testified during a suppression hearing that, in addition to his affidavit, he had provided the issuing judge with a document captioned "Independent Investigation." (*Id. at* 40-42). That document reads:

On or about March 28, 2010 Demetius Beckwith and Jwan Moreland were stopped  for a traffic violation in a rental vehicle. Demetrius Beckwith was the driver and was found to be in possession of approximately $6000 in U.S. currency and a .50 caliber Dessert Eagle. Jwan Moreland was arrested for a drug trafficking warrant.

On or about February 9, 2009 Andre Terrell was stopped for a traffic violation in the area of Home Av and James H McGee Av. During the traffic stop officers smelled a very strong odor of marijuana and after a search of the vehicle found numerous baggies of marijuana in the vehicle packaged for sale along with 10 Ecstacy tablets.

Your affiant, along with Detective Oney stopped Andre D. Terrell September 16, 2008 at 107 N Smithville Rd. Dayton, Ohio 45403 for a minor traffic violation. During the stop, Andre D. Terrell was found to be in possession of 24.32 grams of crack cocaine and $5400 in U.S. currency.

Your Affiant along with Dayton Police Department 5th District crews stopped Andre D. Terrell on July 17th 2007 at 515 W Grand Avenue. Andre Terrell was stopped due to his vehicle matching the description of a vehicle involved in a robbery of a business. During a check of the vehicle, $19,000 in U.S. currency was found in the trunk.

On November 21, 2005, Dayton Police 5th District officers stopped a 1993 Chevy Station Wagon license plate K825482 for several traffic violations. The driver Jwan Moreland exited the vehicle and attempted to run into 2100 Auburn Av. #3 Dayton, Ohio. Jwan Moreland was arrested for possession of heroin. Additionally, inside the vehicle, officers recovered a loaded .45 caliber handgun. On September 2, 2005, India S. Boyd was stopped for a traffic violation [and] she gave an address of 2100 Auburn Av #3 Dayton, Ohio 45406. A Dayton Power and Light records check revealed that India S Boyd has an additional open Dayton Power and Light account at 1529 Roosevelt Av Dayton, Ohio, which is in the process of getting shut off for failure to pay. According to Dayton Power and Light personnel, I was advised that even though India S Boyd had not made payment and was going to have power shut off, Jwan Moreland had placed a request to transfer over the utilities to his name.

On or about February 7, 2004, Andre Terrell was the driver of a vehicle stopped for a traffic violation in Dayton, Ohio. Terrell was with a Chris Meeks and a Shawn Dowell. During the stop Chris Meeks attempted to bite officers in an attempt to flee and swallow some crack cocaine. A loaded .45 caliber handgun was also found in the vehicle. All 3 individuals in the car were on parole at the time.

(*Id*. at Def. Exh. B).[3]

---

[3]The "Independent Investigation" document introduced into evidence during the suppression hearing is unsigned and unsworn.

**{¶ 6}** After examining Detective Velez's affidavit and the "Independent Investigation" document (and hearing testimony about those items at a suppression hearing), the trial court overruled Terrell's motion to suppress drugs and related contraband found during a search of the residence at 239 East Grand Avenue. In a written entry, the trial court reasoned:

In applying the "totality of the circumstances" analysis set forth in [*Illinois v. Gates*, 462 U.S. 213 (1983)], the Court finds that the affidavit submitted in support of the June 1, 2010 search warrant contained information sufficient to support a "fair probability" that contraband would be found at 239 East Grand Avenue, Springfield, Clark County, Ohio and as a result the issuing judge had a "substantial basis" for concluding that probable cause existed.

Specifically, the Court finds that the issuing judge had a "substantial basis" for concluding that probable cause existed because the affidavit contains information that the confidential informant is reliable and credible.

The affiant, Detective Velez, having considerable drug investigation training and experience working in the Narcotics Bureau, expressly stated in the affidavit that he acquired information about the drug trafficking organization (DTO) from "reliable confidential sources." The affidavit reveals that he has been assigned to the Narcotics Bureau since 2007 and has investigated drug cases that resulted in successful prosecutions. Expressly in

---

For present purposes, we will presume that Detective Velez presented the issuing judge with a signed, sworn copy, or that it was physically attached to the affidavit in a manner incorporating it therein. Terrell has not raised the issue or argued otherwise.

the affidavit is the fact that the affiant talked to the confidential informant and interacted with him/her. A reasonable inference can be drawn that the affiant observed his/her demeanor and assessed him/her, placing him in the best position to render an opinion on his/her credibility. His experience, training, and personal assessment of the confidential informant authenticate his opinion on his/her reliability.

Furthermore, the affidavit expressly states that the confidential informant "has provided information which has been verified through independent investigation." For example, the affidavit cites to the confidential informant's disclosure of 4403 Danado Drive, Dayton, Ohio 45406 as being a residence used by the DTO for the storage and distribution of illegal narcotics. That information, as set forth in the affidavit, was verified through independent investigation, to wit: The April 6, 2010 trash pull which yielded plastic baggies containing cocaine residue.

Another example, set forth in the affidavit, of verifying the confidential informant's information through independent investigation is the two vehicles (gray Chevy Avalanche truck and blue Ford Expedition SUV) he/she disclosed as being used by the defendant and the DTO. As explained in the affidavit, detectives verified the same by performing an Accurint Law Enforcement check which identified 1 Oak Street, Trotwood, Ohio 45426 as being used by the defendant and then observing first hand the aforementioned vehicles at that residence.

Giving great deference to the issuing judge's determination of probable cause, the Court finds, for the reasons set forth above, that the issuing judge, in reviewing the affidavit, had a "substantial basis" for concluding that probable cause existed.

(Doc. #23 at 2-3).

**{¶ 7}** On appeal, Terrell contends Detective Velez's affidavit did not provide "a substantial basis to conclude that there was a fair probability that drugs would be found inside 239 East Grand Avenue on June 1, 2010." Terrell claims the affidavit did not identify any recent involvement CS#1 had with 239 East Grand Avenue. He argues: "[N]othing in the Search Warrant Affidavit indicates when or how recently CS#1 had any connection to the property at 239 East Grand Avenue or with Andre Terrell. There was no trash pull done at 239 East Grand Avenue and there was no controlled drug buy. All that can be determined from the Affidavit is that CS#1—who has not shown he/she is reliable from past cases—claims that he/she got drugs from Andre Terrell at 239 East Grand Avenue sometime since August 2009." (Appellant's brief at 16).[4]

**{¶ 8}** "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in

---

[4] Actually, the affidavit never said that CS#1 got drugs from Terrell in Springfield. It states, at ¶ 7, "Terrell and Beckwith also utilize *these locations* [including 2 Dayton residences] to conduct drug transactions." (Emphasis added.)

a particular place.'" *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**{¶ 9}** "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant." *Id.* at paragraph two of the syllabus. "Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*

**{¶ 10}** With the foregoing standards in mind, we hold that the issuing judge lacked a substantial basis for finding probable cause to believe drugs or related contraband would be found inside 239 East Grand Avenue. In reaching this conclusion, we will assume that Detective Velez's affidavit established CS#1's reliability and credibility, as the trial court found. The problem, from a probable-cause perspective, is that CS#1 provided almost no information establishing the likely presence of drugs inside the East Grand Avenue residence when the warrant was issued.

**{¶ 11}** Detective Velez's affidavit identified three people involved in a drug-trafficking operation and multiple locations where CS#1 had obtained drugs over a

nine-month period. The affidavit indicated that CS#1 had been inside two Montgomery County residences where CS#1 had seen very large quantities of drugs and money. The affidavit contained no such claim, however, about CS#1 having been inside the 239 East Grand Avenue home. The affidavit described an independent investigation of some locations, including surveillance, identification of utility subscribers, identification of observed vehicle registrations, and, at one location, a "trash pull." The affidavit made no mention, however, of a "trash pull" at the East Grand Avene home or of any independent surveillance at 239 East Grand Avenue. The affidavit fails to indicate who owns or occupies 239 East Grand Avenue or pays the utilities. The affidavit fails to identify any information about the recency of contacts at the Springfield address. We do not imply that any one or more of these items is necessary, but the absence of all of them contributes to the failure to persuade us that probable cause existed.

{¶ 12} When the search-warrant affidavit is distilled, the facts about 239 East Grand Avenue are these:   1)Three drug traffickers are distributing cocaine, primarily in Dayton but also in Springfield, Ohio;   2) On May 14, 2010, a confidential informant, who had been inside two of the identified Dayton houses, but who was never inside the Springfield residence, indicated that the three locations were used for storage and distribution of narcotics;   3) Over a 9 month period (without any reference to the timing, recency or frequency) of a specific location, the informant said he picked up drugs and returned money to the combined three locations. That's it. There is no averment specifying who the informant contacted at 239 East Grand Avenue, or what he may have seen at that location. Without any corroboration whatsoever related to the Springfield address, and without any sense of the timeliness of the

information, the averred facts provided almost no evidence to support a finding that drugs likely would be found inside 239 East Grand Avenue when the warrant was issued on June 1, 2010. In our view, these facts did not provide a substantial basis for finding probable cause to believe drugs likely were present when the warrant was issued. *Cf. State v. Richardson*, 2d Dist. Greene No. 2011 CA 2, 2012-Ohio-1232.

{¶ 13} In light of our conclusion, we briefly considered the possibility that the "good-faith" exception to the exclusionary rule might apply here. We need not decide that issue, however, because the State did not invoke the good-faith exception below and has not argued it on appeal.[5] "In demonstrating the applicability of the 'good faith exception,' the state bears the burden of proof." (Citation omitted.) *State v. Young*, 146 Ohio App.3d 245, 257, 765 N.E.2d 938 (11th Dist.2001); *see, also*, *State v. Reniff*, 146 Ohio App.3d 749, 756, 768 N.E.2d 667 (8th Dist.2001).

{¶ 14} We recognize that there is some allure to preserving the conviction of a major drug offender, but our role is not to search for an exception to salvage a deficient affidavit. As the Ohio Supreme Court very recently stated:

But efforts "to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land." *Weeks v. United States*, 232 U.S. 383, 393, 34 S.Ct. 341, 58 L.Ed. 652 (1914). There is always a temptation in criminal cases

---

[5]The only mention of the good-faith exception we have found is in Terrell's own appellate brief, where he argues peremptorily against its application.

to let the end justify the means, but as guardians of the Constitution, we must resist that temptation. See *United States v. Mesa*, 62 F.3d 159, 163 (6th Cir.1995). After all, Fourth Amendment freedoms are not second-class rights; they are indispensable to all members of a free society. See *Brinegar v. United States*, 338 U.S. 160, 180-181, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (Jackson, J., dissenting).

*State v. Gardner*, __ Ohio St.3d __, 2012-Ohio-5683, ___ N.E.2d ___, ¶ 24.

{¶ 15} For the foregoing reasons, we hold that the trial court erred in denying Terrell's motion to suppress evidence obtained when police searched the home at 239 East Grand Avenue. The evidence is subject to suppression because Detective Velez's affidavit was deficient. Terrell's second assignment of error is sustained.

{¶ 16} Our resolution of the suppression issue renders moot all but one of Terrell's other nine assigned errors. We still must resolve the first assignment of error, which challenges the legal sufficiency of the evidence presented at trial. This issue is not moot because a reversal based on insufficient evidence is equivalent to an acquittal and bars a retrial for the same offense. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶18. On the other hand, "'where the evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial.'" *Id.* at ¶17, quoting *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). Here the foregoing distinction may be more academic than meaningful.[6] Nevertheless, the fact remains that a reversal based on

---

[6] In our analysis above, we concluded that the drugs found inside 239 East Grand Avenue are subject to suppression and cannot be

suppression of evidence does not preclude a retrial, however improbable a retrial might be, whereas a reversal based on insufficient evidence does.

{¶ 17}   In any event, we reject Terrell's argument regarding the sufficiency of the evidence to prove he knew drugs were inside 239 East Grand Avenue. Moments before executing the search warrant, police watched Terrell leave the house alone. Upon entering the home, police found no one inside. They located a brick of cocaine concealed in a child's toy car six feet from the front door. In the same vicinity, they observed a folding table holding a scale with white powdery residue on it, as well as a razor blade, sandwich baggies, and a box of rubber gloves. Police also found various narcotics, including cocaine, ecstacy, and marijuana in an upstairs room. The property owner, Carter Vanover, testified that Terrell was the only rent-paying tenant. Vanover checked on the house occasionally and never saw anyone there other than Terrell, who had mail in the house and pictures of himself on the walls. Although the record contains evidence that other people also may have resided or spent time in the house, the State's evidence, if believed, was legally sufficient to support a finding that Terrell had knowledge of the large quantity of drugs found inside the house. The first assignment of error is overruled.

{¶ 18}   Having sustained Terrell's second assignment of error, however, we reverse the judgment of the Clark County Common Pleas Court and remand the cause for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

---

used against Terrell. In his sufficiency argument, Terrell contends the State presented legally insufficient evidence to prove he knew those same drugs were inside the home.

FROELICH and CELEBREZZE, JJ., concur.

(Hon. Frank Daniel Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Lisa M. Fannin
Robert Alan Brenner
Hon. Douglas M. Rastatter