[Cite as *State v. Burks*, 2011-Ohio-3529.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

STATE OF OHIO,                                    CASE NO. 17-10-27

   PLAINTIFF-APPELLEE,

  v.

KENNETH BURKS,                                    **O P I N I O N**

   DEFENDANT-APPELLANT.

Appeal from Shelby County Common Pleas Court
Trial Court No. 09CR000330

**Judgment Affirmed**

**Date of Decision:  July 18, 2011**

APPEARANCES:

   *Kimberly S. Kislig* **for Appellant**

   *Jeffrey J. Beigel* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Kenneth Burks ("Burks"), appeals the September 23, 2010 judgment of the Common Pleas Court of Shelby County, Ohio, finding him guilty of one count of attempted trafficking in drugs in violation of R.C. 2925.03 and R.C. 2923.02, a misdemeanor of the first degree, one count of possession of criminal tools in violation of R.C. 2923.24, a misdemeanor of the first degree, and two counts of possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), both misdemeanors of the fourth degree, and sentencing him to an aggregate sentence of 120 days in jail.

{¶2} The facts relevant to this appeal are as follows. On September 26, 2009, Timothy Rourke, a game warden, went to Burks' property to investigate a complaint of someone hunting on the property without permission. He found an individual on the property, who showed him a permission slip, purportedly signed by Burks, allowing him to hunt on the property. Rourke then went to Burks' home at 10450 Schenk Road to verify that he signed the slip. Rourke drove his state-issued game warden truck to Burks' home, which sits approximately 300 feet from the roadway, parked in the driveway, and began to walk to the front door. As he walked along the sidewalk leading to the front door, Rourke noticed a marijuana plant, approximately 12"-15" tall, growing in a flowerbed next to the sidewalk. Rourke knocked on Burks' door, but no one answered. Shortly thereafter, Rourke

notified Deputy Pleiman of the Shelby County Sheriff's Office that he saw a marijuana plant growing in Burks' flowerbed. This information was later provided to the S.N.A.R.E. unit of the sheriff's office, which is the unit charged with investigating drug-related activity.

{¶3} Detective Jodi Van Fossen, a detective assigned to the S.N.A.R.E. unit and two other detectives from the unit went to Burks' home on September 30, 2009, and saw the marijuana plant growing in the flowerbed. Det. Van Fossen used a hidden camera inside of her purse and recorded the plant. She then sent this information to the Bureau of Criminal Identification and Investigation ("BCI") for additional confirmation that it was a marijuana plant, and Senior Agent Charlie Stieglemeyer of BCI observed the recording and agreed that the plant appeared to be a marijuana plant. Det. Van Fossen knocked on Burks' door, but no one answered the door. She then prepared an affidavit based upon the information she had and procured a search warrant for Burks' home from a local municipal court judge that same day.

{¶4} The drug unit executed the warrant later that day. Burks and his son were home at that time. They were secured, and officers began searching the home. During the search, the officers found a bag of marijuana, which weighed 108.68 grams, in a compartment of a dryer. They also found a bag of marijuana, which weighed 12.24 grams, under some clothing in Burks' closet. On the floor in the corner of Burks' closet, the officers located a white bucket, which contained

another bag of marijuana, weighing 26.8 grams, eleven plastic bags of various sizes that contained marijuana residue, a pair of rubber gloves, and two additional plastic bags that did not have any residue inside them. In Burks' master bathroom, the officers found an ice bucket with a hand-held digital scale inside it. Another scale, larger in size, also was found in the bar in Burks' basement. Under Burks' mattress, the officers discovered nine one-hundred dollar bills and a twenty-dollar bill. The officers also found a grinder in another room of the home. Burks informed the officers that the marijuana and the other items belonged to him and that the plant in the flowerbed may have come from a seed he previously tossed away.

{¶5} On October 22, 2009, Burks was indicted on one count of trafficking in drugs, a felony of the fifth degree, in violation of R.C. 2925.03(A)(2), and three counts of possession of criminal tools, each a felony of the fifth degree, in violation of R.C. 2923.24.[1] Burks pled not guilty to each offense, and the matter proceeded to trial on July 6-7, 2010.

{¶6} At trial, the State presented a number of witnesses, including law enforcement officers and laboratory analysts from BCI. Burks presented the testimony of his son and also testified on his own behalf, admitting that all of the items seized by the State belonged to him but that he only smoked marijuana for medicinal purposes and did not sell marijuana. At the conclusion of the

---

[1] The trafficking charge also contained a forfeiture specification regarding the money that was found in Burks' home, including an additional $100 found in an envelope on the television stand in Burks' bedroom.

presentation of the evidence, the jury was provided with instructions and verdict forms, which included instructions and forms for the lesser included offenses of attempted trafficking in drugs, possession of drugs, and possession of drug paraphernalia.

{¶7} The jury found Burks guilty of one count of attempted trafficking in drugs, a misdemeanor of the first degree, one count of possession of criminal tools, a misdemeanor of the first degree, and two counts of possession of drug paraphernalia, both misdemeanors of the fourth degree. Burks was sentenced on September 10, 2010, to an aggregate total of 120 days in jail, a fine of $500.00, and court costs. This appeal followed, and Burks now asserts four assignments of error.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED WHEN IT HELD THAT THE SEARCH WARRANT WAS ADEQUATELY SUPPORTED BY PROBABLE CAUSE AND DENIED THE MOTION TO SUPPRESS FILED BY DEFENDANT-APPELLANT ("KENNETH").**

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED WHEN IT IMPROPERLY OVERRULED KENNETH'S OBJECTION TO PATROLMAN JENNINGS BEING QUALIFIED AS AN EXPERT PURSUANT TO EVIDENCE RULE 702.**

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED WHEN IT OVERRULED KENNETH'S RULE 29 MOTION FOR ACQUITTAL WITH RESPECT TO COUNT I – TRAFFICKING IN DRUGS.**

## ASSIGNMENT OF ERROR IV

**KENNETH'S CONVICTION UNDER COUNT I FOR THE LESSER INCLUDED CRIME OF ATTEMPTED TRAFFICKING IN DRUGS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*First Assignment of Error*

{¶8} In his first assignment of error, Burks maintains that the trial court erred in denying his motion to suppress because the warrant was not supported by probable cause. More specifically, Burks asserts that the only evidence contained in the affidavit was the observation of "an untended, errant marijuana plant" in his flowerbed and a report that someone told another officer that he had purchased marijuana from Burks sometime before the plant in Burks' flowerbed was observed by the officers.

{¶9} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures." Accordingly, the State is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of

privacy without a search warrant. *United States v. Chadwick* (1977), 433 U.S. 1, 7, overruled on other grounds in *California v. Acevedo* (1991), 500 U.S. 565.

{¶10} The Ohio Supreme Court has previously held that

**[i]n determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place."**

*State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238-239. In *Gates*, the Court stated that the definition of probable cause "'means less than evidence which would justify condemnation * * *. It imports a seizure made under circumstances which warrant suspicion.'" *Gates*, 462 U.S. at 235, quoting *Locke v. United States* (1813), 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364. Thus, "[f]inely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trial, have no place in the magistrate's decision. * * * it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Gates*, 462 U.S. at 235, quoting *Spinelli v. United States* (1969), 393 U.S. 410, 419, abrogated by *Gates*, supra.

{¶11} When reviewing a magistrate's or judge's determination of probable cause justifying the issuance of a search warrant under the totality-of-the-

circumstances analysis of *Gates*, an appellate court must simply "ensure that the magistrate had a substantial basis for concluding that probable cause existed." *George*, 45 Ohio St.3d at paragraph two of the syllabus. In fact, often a particular case may not be easy to determine when an affidavit demonstrates the existence of probable cause. Accordingly, the issuing judge or magistrate is to be accorded great deference, "and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*, citing *Gates*, supra. Thus, the precise question before this Court in this case is simply whether we can say that Det. Van Fossen's affidavit provided a substantial basis for the judge's conclusion that there was a *fair probability* that illegal drugs or related paraphernalia would be found in Burks' residence.

{¶12} Here, Burks asserts that the affidavit did not contain sufficient information to determine that probable cause existed to justify the issuance of a warrant. First, Burks contends that the affidavit contained unreliable hearsay. The averment with which he takes issue states, "[w]ithin the past several months, the S.N.A.R.E. Unit has received intelligence that Kenneth Burks has been selling and growing marijuana at his residence[.]" The affidavit does not name the source of this intelligence or include any information to indicate the source's credibility, honesty, or reliability. During the suppression hearing, Det. Van Fossen testified that the drug unit received this information from a trooper who conducted a traffic

stop of an individual, whose name Det. Van Fossen did not know, and that this individual told the trooper that he purchased marijuana from Burks.

{¶13} "[W]ith regard to confidential or anonymous informants, their veracity, reliability and basis of knowledge are all highly relevant in determining probable cause, so '[t]here must be some basis in the affidavit to indicate the informant's credibility, honesty or reliability.'" *State v. Pustelnik*, 8th Dist. No. 91779, 2009-Ohio-3458, ¶ 22, quoting *State v. Harry*, 12th Dist. No. CA2008-01-0013, 2008-Ohio-6380 (internal citations omitted).  However, a failure of the affiant to attest to the informant's veracity or reliability based on past experience "does not negate probable cause if there is * * * some other indicia of reliability." *Pustelnik*, supra, citing *Gates*, supra.  Thus, an identified informant who provides corroborated information may establish probable cause.  See *State v. Martin*, 8th Dist. No. 89030, 2007-Ohio-6062.

{¶14} In this case, we agree with Burks that the information regarding the receipt of intelligence by the drug unit that Burks was selling marijuana from his home did not provide the issuing judge with a substantial basis for concluding that there was a fair probability that illegal drugs or related paraphernalia would be found in Burks' residence given the lack of identification of the source or any indicia that this information was reliable.  However, our inquiry does not end there.

{¶15} Burks further contends that the observation of "an untended, errant marijuana plant" in his flowerbed was not sufficient to support the issuance of the search warrant. However, his characterization of this information is not accurate as there was no evidence that this plant was either untended or errant.

{¶16} The affidavit in this case describes a growing marijuana plant in a flowerbed next to the house in the front yard of Burks' residence, observed by a law enforcement officer, Det. Van Fossen, who had participated in numerous drug investigations, and who determined based upon her training and experience that the plant appeared to be marijuana. This plant was also observed by a game warden the preceding week, who also believed that the plant was a marijuana plant and, accordingly, he reported this observation to the drug unit. Further, Det. Van Fossen used a hidden camera to record her findings, sent the video of the plant to BCI, and had her opinion that it was a marijuana plant confirmed by a senior agent at BCI. Based upon her training and experience, Det. Van Fossen stated that marijuana starter plants are grown inside and then transplanted outside and that given the growing marijuana plant in the flowerbed next to Burks' house, there was likely to be more marijuana plants and cultivation equipment inside of the home. Thus, she requested a search warrant for Burks' residence.

{¶17} While these facts may be minimal, we do not believe that a reviewing court can say that a neutral and detached judge confronted with this affidavit had no substantial basis for concluding that there was a fair probability

that marijuana or paraphernalia related to marijuana would be found in the residence. On the contrary, the marijuana plant was located in a flowerbed in Burks' front yard next to his house. As noted in *George*, a case that also involved the issuance of a search warrant based solely upon an observation by a trained law enforcement officer of a single marijuana plant growing in the yard of the defendant, the presence of growing marijuana in a yard

> **does not normally occur spontaneously in Ohio and, in this era, the presence of such a plant must be said to raise objective and reasonable inferences amounting to a fair probability, in the words of Judge Black, "* * * that the marijuana is intentionally grown, and that within the house will be found instruments for its cultivation and some marijuana prepared or being prepared for use."**

*George*, 45 Ohio St.3d at 326, 330, quoting *State v. George*, 1st Dist. No. C-870111, unreported, 1988 WL 6523 (Black, J., dissenting). Therefore, as the Ohio Supreme Court concluded in *George*, we find that the evidence in the case sub judice sufficiently supported the judge's determination that there was probable cause to issue the warrant.

{¶18} However, even were we to determine that this affidavit did not furnish the judge with a substantial basis for concluding that there was probable cause to search the house, we would be compelled, nevertheless, to uphold this search based upon the "good faith exception" to the exclusionary rule set forth in *United States v. Leon* (1984), 468 U.S. 897, and adopted by the Ohio Supreme Court in *State v. Wilmoth* (1986), 22 Ohio St.3d 251, 490 N.E.2d 1236. In *Leon*,

the Court held that the Fourth Amendment exclusionary rule should not be applied so as to bar the State's use of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. *Id.* at 918-923, 926. More specifically, the Court held that

> **"[t]he deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. * * * Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force."** *Michigan v. Tucker* **(1974), 417 U.S. 433, 447. * * * This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. * * * In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. * * * Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."**

*Leon*, supra, at 920-92. (Footnotes omitted.) However, "the officer's reliance on the magistrate's probable-cause determination * * * must be objectively reasonable[.]" *Id.* at 922, 104 S.Ct. at 3420.

{¶19} In this case, there is no suggestion of falsity or reckless disregard for the truth on the part of the affiant. Nor is there any indication that the municipal judge wholly abandoned his judicial role in issuing this warrant. Nor can we say, from the standpoint of the law enforcement officers, that this warrant, which was

approved by a judge, is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable or so facially deficient that the executing officers could not reasonably presume it to be valid. Accordingly, we find that this search falls squarely within the good faith exception to the exclusionary rule set forth in *Leon* and *Wilmoth*, and should be upheld even were the warrant lacking in probable cause as alleged.

{¶20} For both these reasons, we find that the trial court did not err in denying the motion to suppress, and the first assignment of error is overruled.

*Second Assignment of Error*

{¶21} Burks next contends that the trial court erred when it qualified Officer James Jennings as an expert in the area of purchasing and selling narcotics. Burks asserts that the State failed to notify him that Off. Jennings was being called to testify as an expert witness, that the State failed to comply with Evid.R. 702(A) and (C) in having Off. Jennings qualified as an expert, and that if Off. Jennings was an expert, he was only an expert on "typical," "street users," not on people who use marijuana for medicinal purposes.

{¶22} The trial court has sound discretion to determine an expert witness' qualifications to testify on a particular subject. *State v. Jones*, 90 Ohio St.3d 403, 414, 2000-Ohio-187, 739 N.E.2d 300, citing *State v. Awkal*, 76 Ohio St.3d 324, 331, 1996-Ohio-395, 667 N.E.2d 960. Therefore, any decision concerning the admission or exclusion of expert testimony will not be disturbed absent an abuse

of discretion. *Jones*, supra, citing *State v. Bidinost*, 71 Ohio St.3d 449, 453, 1994-Ohio-465, 644 N.E.2d 318.

**{¶23}** Initially, we note that at trial, counsel for Burks objected to Off. Jennings being qualified as an expert but provided no basis for this objection. Additionally, the record reveals that Off. Jennings was listed as a witness in the discovery provided by the State and that at no point did trial counsel indicate that the defense did not know that Off. Jennings was a potential witness, that the defense did not know the State would be calling him as an expert, or that the defense was somehow prejudiced by the State failing to provide this information to Burks' counsel nor does Burks' brief to this Court indicate how he was unfairly prejudiced by not knowing that the State intended to use Off. Jennings as an expert witness. Accordingly, we find Burks' assertion that he was unfairly prejudiced in this regard to be without merit.

**{¶24}** As to his remaining claims, the Rules of Evidence provide that expert testimony must meet the criteria of Evid.R. 702, which states,

> **[a] witness may testify as an expert if * * *: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons * * *; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical or other specialized information. * * ***

Evid.R. 702. Burks maintains that the State failed to satisfy Divisions (A) and (C) of this Rule.

{¶25} In application of Evid.R. 702 to the case at bar, the record indicates that Off. Jennings was a law enforcement officer for seventeen years, nearly nine of those years spent in the drug unit. He attended 160 hours of training directly involving drugs, weights, measures, and purchasing of drugs. He worked with various drug task forces, purchasing drugs at both the street level and with mid-level dealers. He testified that he has made anywhere from three hundred to five hundred hand-to-hand controlled buys of marijuana and various other narcotics and that his marijuana purchases ranged from a single joint up to two pounds of marijuana at a time. He then testified regarding how a typical purchase of marijuana occurs, what street lingo is typically used in the marijuana trade and the language employed to describe various units of measurement, the role of digital scales in the marijuana trade, and what other items are commonly used in the marijuana trade.

{¶26} Off. Jennings' testimony clearly related to matters beyond the knowledge or experience possessed by law-abiding lay persons, thus satisfying the requirements of Evid.R. 702(A). Further, his testimony was based upon specialized information that he acquired from participating in hundreds of drug investigations over a nearly nine-year span of time, thus satisfying the requirements of Evid.R. 702(C).

{¶27} Moreover, the State's theory of the case was that Burks was trafficking in marijuana, not that he was simply someone who used marijuana for

his personal medical issues as Burks purported. Therefore, whether Off. Jennings was an expert on marijuana users who smoke marijuana for medicinal purposes was not relevant to whether he was *qualified* to provide expert testimony regarding the purchasing and selling of marijuana. Rather, his testimony adequately satisfied the requirements of Evid.R. 702(A) and (C), and the trial court did not err in qualifying him as an expert in the purchasing and selling of narcotics. For these reasons, the second assignment of error is overruled.

*Third Assignment of Error*

{¶28} In his third assignment of error, Burks contends that the trial court erred in overruling his motion for acquittal as to Count One, the count of trafficking in drugs. Burks bases this assertion upon the lack of any direct evidence, via controlled buys, the testimony of an informant, or other evidence of a growing operation, that he was *trafficking* in drugs.

{¶29} Reviewing a challenge to the sufficiency of the evidence requires this Court to examine the evidence in the light most favorable to the prosecution. The Ohio Supreme Court has set forth the sufficiency of the evidence test as follows:

> **[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.**

*State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.

{¶30} Here, Burks was charged with trafficking in drugs in violation of R.C. 2925.03(A)(2), which states that "[n]o person shall knowingly do any of the following: * * * (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." Burks maintains that there was no direct evidence that he prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed marijuana. However, the Ohio Supreme Court has held,

> **[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.**

*Id.* at paragraph one of the syllabus. Additionally, R.C. 2925.03(A)(2) does not require that the offender actually sell marijuana.

{¶31} The State presented evidence that Burks had multiple bags of marijuana, some larger than others, in various locations in his home, that he had both a small digital scale and a large digital scale, that he also had a grinder that is used to grind marijuana leaves down so that it can be smoked, and that one of the

-17-

bags of marijuana was found in a bucket that also contained a pair of gloves and a number of clear, plastic baggies, eleven of which contained marijuana residue. In addition, the evidence showed that a marijuana plant was growing in Burks' flowerbed and that he admitted that the marijuana in the home belonged to him. The State also presented the testimony of Off. Jennings, who testified that drug dealers often buy marijuana in bulk, weigh it, and then break it down into smaller bags to sell. He further testified that digital scales, both large and small, are used by dealers to properly break down the marijuana and that rubber gloves are often used by those in the drug trade when preparing the marijuana for sale because it is sticky. Off. Jennings also testified that in his experience, those who smoke marijuana joints do not weigh the amount of marijuana being placed into their joint.

{¶32} Given this evidence and construing it in a light most favorable to the prosecution, reasonable minds could have found the essential element that Burks prepared marijuana for shipment or prepared it for distribution was proven beyond a reasonable doubt. Further, $920.00 was found under Burks' mattress in the room where much of the evidence was discovered, which could also lead to the reasonable inference that he shipped, transported, or delivered marijuana and was paid for this service. Thus, for all of these reasons, the third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶33}** Burks asserts in his fourth assignment of error that the verdict of guilty as to the lesser included offense of attempted trafficking in drugs was against the manifest weight of the evidence. An appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Id*. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Andrews*, 3rd Dist. No. 1-05-70, 2006-Ohio-3764, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; *Thompkins*, 78 Ohio St.3d at 387, 678 N .E.2d 541.

**{¶34}** The jury found Burks guilty of attempted trafficking in drugs. In order to have made this determination, the jury had to find beyond a reasonable doubt that Burks knowingly engaged in conduct that, if successful, would constitute or result in the offense of trafficking in drugs. See R.C. 2925.03(A)(2);

R.C. 2923.02(A). In interpreting what constitutes an attempt pursuant to R.C. 2923.02(A), the Ohio Supreme Court has held as follows:

> **In *State v. Woods*, supra, 48 Ohio St.2d 127, 2 O.O.3d 289, 357 N.E.2d 1059, paragraph one of the syllabus, we defined a "criminal attempt" as "an act or omission constituting a substantial step in a course of conduct planned to culminate in [the actor's] commission of the crime." A "substantial step" requires conduct that is "strongly corroborative of the actor's criminal purpose." *Id*. With reference to "overt acts," we said in *Woods* that the "substantial step" standard "properly direct[s] attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention * * * in order to prevent the crime when the criminal intent becomes apparent." *Id*. at 132, 2 O.O.3d 289, 357 N.E.2d 1059. Thus, we conclude that an "overt act" is simply an act that meets the "substantial step" criterion enunciated in *Woods*.**

*State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶¶ 101-102.

**{¶35}** As noted in our discussion of the third assignment of error, the evidence showed that law enforcement found marijuana and a number of items used to prepare and/or distribute marijuana for sale or resale in Burks' home when the search was conducted. Although Burks testified that he did not sell marijuana and the items found in his home were for personal, medicinal use due to a severe injury he received at work a number of years ago for which he had multiple surgeries, we cannot conclude based on the evidence before the jury that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Therefore, the fourth assignment of error is overruled.

{¶36} For all of these reasons, the judgment of the Common Pleas Court of Shelby County, Ohio, is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jnc**